

**FILED**

Mar 05 2015, 7:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael H. Michmerhuizen
Barrett & McNagny, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Brian C. Hewitt
Mark R. Galliher
Alerding Castor Hewitt, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Irrevocable
Trust of Mary Ruth Moeder

Susan R. Moeder,

*Appellant-Respondent,*

v.

Salin Bank & Trust Company,

*Appellee-Petitioner.*

March 5, 2015

Court of Appeals Cause No.
49A05-1403-TR-142

Appeal from the Marion Superior
Court
The Honorable Gerald S. Zore
49D08-0510-TR-041012

**Bailey, Judge.**

# Case Summary

[1]     Salin Bank and Trust Company ("Salin"), trustee of the Mary Ruth Moeder

Revocable Living Trust Agreement (the "Trust"), petitioned the probate court

to approve an accounting of the Trust and to resign as trustee. Susan Moeder

("Moeder"), the former trustee and current contingent remainder beneficiary of the Trust, objected to the accounting and alleged that Salin had breached its fiduciary duties by imprudently administering the Trust in violation of the Indiana Uniform Prudent Investor Act. The probate court entered a judgment in favor of Salin and ordered that Moeder personally pay the reasonable attorney's fees and costs Salin incurred in defending against Moeder's objection and claims. We affirm.

# Issues

Moeder presents four issues for review, which we reorder and restate as:

I. Whether the probate court abused its discretion in granting a one-day continuance at the outset of the hearing;

II. Whether the probate court's findings of fact were clearly erroneous and therefore do not support the judgment;

III. Whether the probate court abused its discretion in ordering Moeder to pay Salin's reasonable attorney's fees and costs because she brought or continued to litigate a groundless claim; and

IV. Whether the probate court abused its discretion in awarding $106,001.28 in attorney's fees and costs.

We also address an issue raised by Salin: whether Salin is entitled to an award of appellate attorney's fees.[1]

# Facts and Procedural History

Mary Ruth Moeder ("Mother") established the Trust on November 17, 1997, named herself the initial trustee, and named her two children, Moeder and John Moeder ("John"), as the primary beneficiaries. The Trust provided that upon Mother's death, the Trust assets would be divided equally between her children. When Mother died in 2001, the Trust became irrevocable and Moeder became the successor trustee.

On September 12, 2006, the probate court entered an order authorizing Moeder to resign as trustee and appointing Salin as successor trustee. The court also ordered the distribution of Moeder's half of the Trust assets to her. John's share was not distributed, and thus John is the primary beneficiary of the Trust.

---

[1] Salin also asks us to decide whether Moeder's appeal of a separate probate court order made on October 8, 2013 is untimely and therefore forfeited. In her Notice of Appeal filed in this case, Moeder listed the October 8, 2013 order as an "Order being appealed." (Appellee's App. 71.) However, in a footnote on page two of her brief, Moeder withdrew her appeal of the October 2013 order, concluding that it was not currently appealable. As Moeder has not presented her appeal of the October 2013 order to this Court, we decline Salin's request to determine at this juncture whether Moeder's appeal of that order was untimely. *See In re Estate of Rawlings*, 451 N.E.2d 1121, 1122 (Ind. Ct. App. 1983) ("We do not render advisory opinions.").

Pursuant to the Trust terms, Moeder is the contingent remainder beneficiary of John's share of the Trust.

[6] When Salin took over as trustee in November 2006, the Trust assets included cash and stocks with a total portfolio value of $686,904.65. (App.[2] 226.) Among the stocks were 14,985 shares of JP Morgan Chase & Co. stock ("the JPM stock"), which comprised approximately 85% of the total Trust assets. At the time of the transfer, Salin was aware the Trust had a large concentration of JPM stock.

[7] Although Moeder turned over the Trust assets to Salin in November 2006, Salin did not immediately receive from Moeder the necessary information to allow Salin to make investment decisions about the Trust portfolio. In April 2007, after Salin learned that the investment cost basis of the JPM stock was $38.77 per share, Salin developed a diversification plan that called for reducing the concentration of JPM stock and diversifying the Trust assets over two years, 2007 and 2008. Salin's Vice-President Trust Officer and Chief Investment Officer John Roederer ("Roederer") testified that Salin "wanted to diversify over two years to . . . keep the tax impact . . . reasonable." (Tr. 286.)

---

[2] All citations to "App." are to the Appellant's Appendix, unless otherwise noted.

[8]     Pursuant to the diversification plan, Roederer sold 7,000 shares of the JPM stock on July 30, 2007 for a gain of $42,696.59 over the cost basis. (Respondent's Exhibit 6.) He described the timing of the sale as "a good opportunity to reduce substantially the risk related to that position [the concentration.]" (Tr. 286.) Salin retained the remaining shares of JPM stock because "it still could enjoy some upside" and the plan called for diversification over two years. (Tr. 286.)

[9]     In 2008, Salin "put on hold the diversification program" because of the widespread financial crisis. (Tr. 323.) Salin sold no shares of the JPM stock that year, as Roederer considered JP Morgan "one of the few banks that was reasonably fundamentally sound at that point in time" and he "didn't want to sell [the JPM stock] at a distressed price." (Tr. 337.)

[10]    In April 2009, as the stock market began to improve, Salin revised the Trust's diversification plan. The revised plan called for Salin to reduce the concentration of JPM stock over 2009 and 2010 by selling 500 shares of the remaining JPM stock approximately every two months. Roederer no longer considered the prices distressed, but "improving." (Tr. 337.) Salin made its first two sales of 500 shares each on April 20, 2009 and June 4, 2009, for losses of approximately $3,380 and $870 below the cost basis, respectively. (Respondent's Exhibit 6.) Except for these two sales, the sales made in 2009 and 2010 resulted in gains. (Respondent's Exhibit 6.) The periodic sales continued into early 2011 until the JPM stock concentration was reduced and the portfolio was diversified.

[11] On July 29, 2011, Salin filed a "Request to Redocket Trust to File Current Report and Accounting, Resign as Trustee Upon Approval of Current Accounting and for Appointment of Successor Trustee." At the time Salin filed the accounting, the diversified portfolio value was $751,214.30. (App. 234.)

[12] In response, on September 1, 2011, Moeder filed an "Objection to Trustee's Accounting," in which she alleged that Salin "generally and consistently failed to administer the Trust as a 'Prudent Investor[.]'" (Appellee's App. 16.) Specifically, Moeder alleged that Salin failed to: preserve Trust property, maintain clear records, perform a timely initial review of the Trust assets, develop and implement an appropriate investment strategy, diversify the Trust assets at the right time, consider the Trust's needs for liquidity, use special skills and expertise in investing and managing the Trust, and file an accurate accounting.

[13] The probate court scheduled a hearing on Salin's petition and Moeder's objection for December 2, 3, and 4, 2013. On December 2, 2013, both parties appeared and discovered that Judge Zore was on medical leave. Although Senior Judge Goodman had reviewed the case and was prepared to proceed, Salin moved for a continuance, citing Judge Zore's "prior involvement and familiarity with the case." (App. 165.) Judge Goodman contacted Judge Zore and learned that Judge Zore was approved to return to work the next day. Over Moeder's objection, Judge Goodman granted Salin's motion for a one-day continuance. The hearing began on December 3, 2013 with Judge Zore presiding.

[14] On February 28, 2014, the probate court entered an order containing findings of fact and conclusions thereon in which the court approved Salin's tendered accounting and entered judgment in favor of Salin on the claims raised in Moeder's objection. In addition, the court found that Moeder's claims were "time-barred or otherwise unsupported by the facts" (App. 31) and that by bringing her objection, Moeder had "done nothing to benefit John," who is blind and subject to a guardianship, but rather "eroded John's share of the Trust by forcing Salin as Trustee [to] incur the expense of litigating [Moeder's] objection." (App. 31.) Consequently, the court ordered Moeder to pay Salin's attorney's fees and costs incurred in defending against Moeder's objection pursuant to Indiana Code section 34-52-1-1(b). The court then directed Salin to file a supplemental accounting and an application for attorney's fees and costs incurred by Salin in litigating the objection. Finding that there was no just reason for delay, the court directed the entry of a final judgment pursuant to Indiana Trial Rule 54(B). On March 26, 2014, Moeder timely filed a Notice of Appeal.

[15] After Salin filed its request for attorney's fees and costs, the probate court ordered on July 2, 2014 that Moeder personally pay to Salin $97,465 in attorney's fees, plus $8,536.28 in litigation costs, for a total award of $106,001.28. (App. 34.) Moeder timely filed a Notice of Appeal from the attorney's fees order on July 22, 2014.

[16] In this consolidated appeal, Moeder appeals the probate court's judgment in favor of Salin, award of attorney's fees and costs to Salin, and the amount of attorney's fees and costs awarded.

# Discussion and Decision

## Continuance

[17] Moeder's first contention on appeal is that the probate court abused its discretion when it granted Salin's request for a continuance made on the first day of the hearing. Upon a party's motion, "trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence." T.R. 53.5. A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion. *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009). There is a strong presumption that the trial court properly exercised its discretion. *Id.* A trial court abuses its discretion when it reaches a conclusion that is clearly against the logic and effect of the facts or the reasonable and probable deductions that may be drawn therefrom. *Evans v. Thomas*, 976 N.E.2d 125, 127 (Ind. Ct. App. 2012), *trans. denied*.

[18] In this case, the hearing was scheduled for December 2, 3 and 4, 2013, and both parties appeared on the morning of December 2. Senior Judge Goodman was presiding because Judge Zore was on medical leave. Salin moved for a continuance, citing Judge Zore's "prior involvement and familiarity with the case." (App. 165.) Over Moeder's objection, Judge Goodman granted Salin's

motion for a one-day continuance. The hearing began the following day, December 3, 2013, with Judge Zore presiding.

[19] The record reflects that the Trust is and has been since 2005 the subject of several legal proceedings, including a prior appeal to this Court.[3] We cannot say that the court abused its discretion by granting a one-day continuance so that a judicial officer already familiar with the particular complexities of this Trust could hear the evidence.

[20] Moeder argues, however, that she suffered prejudice as a result of the continuance because both she and her attorney had traveled from northern Indiana to Indianapolis and were prepared to proceed on December 2, 2013. Although we acknowledge the inconvenience to Moeder, we do not consider the additional travel time and expense incurred to be prejudicial. Furthermore, we observe that when a continuance is granted, Trial Rule 53.5 permits the court to "award such costs as will reimburse the other parties for their actual expenses incurred from the delay." T.R. 53.5. Yet the record does not show

---

[3] *See In re Revocable Trust of Mary Ruth Moeder*, No. 49A02-1205-TR-377, slip op. (Ind. Ct. App. Oct. 30, 2012).

that Moeder requested that these costs be awarded, nor does she allege on appeal that a request, if made, was erroneously denied.

[21] Moeder also argues that she was prejudiced by the continuance because the hearing ended as originally scheduled on December 4, 2013, such that the continuance "effectively reduced the amount of trial by a third." (Appellant's Br. 26.) Moeder contends that the continuance negatively affected her ability to present her case because Salin, as the party seeking the accounting, presented its case first, and Moeder did not have ample time to present her supporting evidence. She argues that she was particularly prejudiced by the "shortened" hearing because the probate court awarded Salin attorney's fees in part because the court found that Moeder presented "no evidence" that Salin engaged in any wrongdoing. (App. 31.)

[22] The record shows that, on the second day of the hearing, Moeder's counsel informed the court: "I don't know that we're going to finish today." (Tr. 421.) The court responded "Oh, we are going to finish today" and then elaborated that the hearing would conclude at 4:30 p.m. (Tr. 421-22.) Moeder's counsel responded: "Okay, very good. All right." (Tr. 422.) Moeder then called her next witness and, at the conclusion of that testimony, rested her case, stating:

> [Moeder's Counsel]: Your Honor, I have no further evidence to present in our case in chief. As entered off the record with regard to the exhibits which we have - - are part of our book, 1, 2 and 3, 17, 18 and 19 have either been admitted through their evidence or we are not offering those.
>
> The Court:          All right.

[Moeder's Counsel]: With that, we rest.

(Tr. 476-77.) Moeder rested her case enough in advance of the court's anticipated end time that Salin had time to present additional witness testimony. Moeder's contention that she was denied ample opportunity to present her evidence is thus unsupported by the record.

[23] Furthermore, at no point did Moeder object to the probate court's management of its schedule or otherwise argue to the court that she was not permitted sufficient time to present her case. Accordingly, even if Moeder's ability to present her case was impeded, her argument is waived. *See Ansert v. Ind. Farmers Mut. Ins. Co.*, 659 N.E.2d 614, 617 (Ind. Ct. App. 1995) ("Generally, a party may not raise an issue on appeal which was not raised in the trial court."), *trans. dismissed*.

[24] The probate court did not abuse its discretion when it granted Salin's motion for a continuance.

# Findings and Conclusions

Moeder next argues that the probate court's findings and conclusions were clearly erroneous and therefore do not support the judgment.[4]

In all actions tried upon facts without a jury, the court, either *sua sponte* or upon the written request of any party filed with the court prior to the admission of evidence, "shall find the facts specially and state its conclusions thereon." Ind. Trial Rule 52(A). Where, as here, the court entered findings and conclusions upon a party's written request, we apply a two-step review. *In re Riddle*, 946 N.E.2d 61, 66 (Ind. Ct. App. 2011). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the judgment. *Id.* We will set

---

[4] At the outset, we note that the entire "Argument" section of Moeder's brief, while it generally contains citation to relevant law, is completely devoid of citations to the appendix or record on appeal. We direct counsel to Indiana Appellate Rule 46(A)(8)(a), which provides that each contention made in the argument section of an appellant's brief "must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." It is a complaining party's duty to direct our attention to the portion of the record that supports its contentions. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 729 (Ind. Ct. App. 2009). The purpose of the rule is to relieve courts of the burden of searching the record and stating a party's case for her. *Id.* Although failure to comply with the appellate rules does not necessarily result in waiver of an issue, it is appropriate where noncompliance impedes our review. *Id.* Although we do our best here to address Moeder's contentions on their merits, Moeder's noncompliance comes dangerously close to impeding our review. This is particularly true – and her noncompliance is particularly mystifying – in this section of her brief, in which her argument depends on her identification of evidence that supports her claim.

aside the trial court's findings and conclusions only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* We review conclusions of law *de novo*. *Id.*

[27] In any case where special findings and conclusions are made, "the court shall allow and may require the attorneys of the parties to submit to the court a draft of findings of facts and conclusions thereon which they propose or suggest that the court make in such a case." T.R. 52(C). Here, the probate court adopted verbatim Salin's proposed findings of fact and conclusions thereon. As our supreme court has observed, the practice of accepting verbatim a party's proposed findings "weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005) (quoting *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003)). However, it is not uncommon or *per se* improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. *Id.* at 1095. In these cases, we urge trial courts to scrutinize parties' submissions for mischaracterized testimony and legal argument rather than the findings of fact and conclusions thereon as contemplated by the rule. *Id.* at 1096. This is because the trial court, when it signs one party's findings, is ultimately responsible for their correctness. *Id.* Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. *Id.*

[28] Moeder argues that the probate court's findings that Moeder "offered no evidence that Salin did anything wrong or that the Trust suffered any loss as a result of Salin's actions" were clearly erroneous. (App. 31.) Moeder insists on appeal that she presented evidence of wrongdoing and harm and therefore the court's finding to the contrary was clearly erroneous.

[29] Generally, a trustee bears the burden of justifying the propriety of items in a trust account. *In re Riddle*, 946 N.E.2d 61, 68 (Ind. Ct. App. 2011). But when a trustee files specific accounts and makes a *prima facie* showing that the accounts are proper, the burden of persuasion shifts to the beneficiaries to show specific instances of impropriety. *Id.* Accordingly, it was Moeder's burden to establish the allegations she raised in her objection.

[30] The heart of Moeder's objection was that Salin "generally and consistently failed to administer the Trust as a 'Prudent Investor[.]'" (Appellee's App. 16.) On appeal, Moeder points to several actions in which Salin engaged (or did not engage) as evidence of imprudent trust administration. Moeder neatly sums up the majority of this "evidence" in her argument:

> [T]he initial Investment Policy Statement noted no unusual
> circumstances when it should have noted a concentration. There was

no evidence that AIRC[5] reviewed the [Trust] prior to April 24, 2008. There was no written plan of "sound diversification" in at least 2007. The AIRC minutes that do exist do not reflect any meaningful consideration of the [Trust] and the testimony of [two of Salin's trust administrators] gave the impression that Roederer was acting essentially without review. There were no limit orders in place to protect the over-concentration of JP Morgan stock from entering into a freefall. In April 2009, Salin adopted a rigid, inflexible plan to sell 500 shares of JP Morgan stock every two months which was more or less implemented.

(Appellant's Br. 42-43.)

[31] Despite her numerous allegations, Moeder presented at the hearing no credible evidence that any of the actions or omissions to which she points constituted imprudent investment practices in contravention of the Indiana Uniform Prudent Investor Act ("the Act"). *See* I.C. § 30-4-3.5-1 *et seq.* For example, the Act provides: "Within a reasonable time after accepting a trusteeship or receiving trust assets, a trustee shall review the trust assets and make and implement decisions concerning the retention and disposition of assets . . . ." I.C. § 30-4-3.5-4. The Act therefore demands only that the initial review occur within a "reasonable time." Moeder points to the fact that Salin presented "no

---

[5] AIRC is Salin's Administrative Investment Review Committee. The committee consists of four trust officers who periodically review the trust accounts, including annual reviews required by law. **(Tr. 104, 111.)**

evidence of an initial review being conducted within 60 days" as supporting evidence that Salin failed to meet the standards of a prudent investor. (Appellant's Br. 31.) Yet Moeder failed to present at the hearing any evidence that more than sixty days is an unreasonable amount of time to conduct an initial review.

[32] On the other hand, Salin's former Vice President Trust Officer and the original administrator of the Trust, Rhonda King ("King"), testified that Salin's normal practice was to review trust assets within sixty days of receiving them. However, King testified that Salin was unable to do so in this case because Moeder, the former trustee, failed to provide Salin with the relevant investment information to permit Salin to complete the review. After receiving the investment cost basis information from Moeder in April 2007, King testified that she and Roederer reviewed the assets and developed a diversification plan. Thomas Jenkins ("Jenkins"), Salin's trust expert, testified:

> Well, the initial review generally and I think Salin policy manual is two months and [sic] sixty days or something like that, which is, I would say, the industry standard. But in order to do that review, you have to have all of the information available to make the decisions that you need to make. And reviewing the documents that I was given, the depositions and other related material, Salin didn't have that information to make those decisions until the following year.

(Tr. 481.) Jenkins further opined that, in light of the problems Salin encountered in receiving the information from Moeder, Salin complied with its fiduciary duties in conducting the initial review. Moeder presented no evidence to refute Jenkins's testimony.

[33] At best, Moeder's arguments amount to a request to reweigh the evidence, which we decline to do. *See Massey v. St. Joseph Bank & Trust Co.*, 411 N.E.2d 751, 753 (Ind. Ct. App. 1980) ("Upon the review of a negative judgment, this Court will not reweigh the evidence nor resolve issues of credibility, but will scrutinize the evidence in the record most favorable to the judgment."). Yet our close scrutiny of the evidence reveals that, as the probate court concluded, Moeder presented no evidence to support her claims regarding Salin's initial review.

[34] Beyond Moeder's arguments about perceived paperwork deficiencies, the gravamen of Moeder's appeal is that there was an "issue of fact" as to whether Salin properly diversified the Trust. (Appellant's Br. 30.) The facts show that, after Salin made the initial sale of 7,000 shares of the JPM stock on July 30, 2007, no more sales were made until April 2009. Moeder points to several days between July 31, 2007 and April 2009 when JPM stock sold on the open market for more than $46.90 per share, the price per share on the day Salin received the Trust assets.[6] (Appellant's Br. 31.) She thus argues that the Trust "could have

---

[6] Moeder alleges that Salin's diversification plan caused harm because Salin sold "all but 500 of the shares for a price less than their initial value." (Appellant's Br. 42.) Throughout her argument, Moeder uses $46.90 as the "initial value" of the JPM stock and the benchmark for gains and losses. However, taxable gains and losses are calculated as the difference between the investment cost basis, which in this case was $38.77 per share, and the sale price. **(Tr. 295.)** As such, only two sales were made for losses.

been completely diversified in 2007-08 with no loss whatsoever." (Appellant's Br. 33.) To support her arguments at the hearing, she introduced into evidence a listing of JPM stock per share values at close from November 1, 2006 through September 29, 2010.

[35] However, as Moeder recognizes, "[a] breach of trust does not lie simply because the shares were sold for an amount below the value for which they were received." (Appellant's Br. 37.) To satisfy her burden of proof, Moeder was required to show that Salin's actions did not meet the standard of a prudent investor as outlined in the Act. To evaluate such a claim, the Act explicitly provides that "[c]ompliance with the prudent investor rule is determined in light of the facts and circumstances existing at the time of a trustee's decision or action and not by hindsight." I.C. § 30-4-3.5-8.

[36] To that end, Moeder failed to support her objections to Salin's investment decisions with any competent evidence. Moeder, who is not an investment professional or expert in trust administration, relied on her own testimony that she believed that Salin acted imprudently in holding the stock in 2008 and then resuming sales in 2009. Specifically, she testified that in 2009, she saw an interview with Jamie Dimon, the Chief Executive Officer of JP Morgan Chase & Co., which "encourage[d] me to believe that JPM will -- will weather this situation [the financial crisis] quite well." (Tr. 463.) She then testified that she personally disagreed with Salin's decision to sell the JPM stock in 2009 because she believed it was still selling at distressed prices. In short, Moeder's evidence boiled down to Moeder's own lay testimony that she believed Salin should have

done things differently. However, she did not produce credible, expert testimony or any other competent evidence that Salin's diversification plan and its steps taken in furtherance of that plan failed to meet the standard of a prudent investor.

[37] On the other hand, in response to Moeder's objections, Salin introduced Jenkins's expert testimony that Salin's diversification plan appeared to be "a rational plan." (Tr. 504.) Jenkins testified that Salin's 2007 "decision to sell seven thousand shares was in all probability prudent. Because right out of the box at that point, you at least only have half as big a problem as you had the day before." (Tr. 487.) Roederer testified that he declined to sell the remaining stock in early to mid-2008 because the market had changed and his research and extensive experience indicated the prices were distressed. Jenkins confirmed that "[t]he plan of diversification . . . by its nature has to be flexible, has to take certain things into account; market conditions, other things like that." (Tr. 485.) Roederer testified that he resumed sales in 2009 because JPM stock was "improving" and no longer distressed (Tr. 337), and Jenkins described that approach as "appropriate." (Tr. 492.) As to the two sales made in 2009 at modest losses, Jenkins testified that occasionally a trustee may need to sell a stock at a loss to reduce a concentration. Overall, Jenkins described Roederer's process of watching the JPM stock prices daily and making sales based on this information as "very prudent." (Tr. 492.)

[38] More importantly, Moeder points to no evidence that the overall Trust value was actually harmed by these sales. Moeder's own evidence establishes that

Salin made all but two sales for a taxable gain over the investment cost basis of $38.77 per share. Contrary to Moeder's contention that Salin failed to preserve the Trust property, the total Trust portfolio value increased by $64,309.65 under Salin's management, despite $156,265.86 in disbursements.[7] (App. 234.) In fact, Moeder's *own objection* to Salin's accounting indicates that the Trust assets had greater fair market value in 2011, after Salin allegedly mismanaged the Trust assets, than when Salin's received the Trust assets in 2006. Although Moeder seems to allege that the value could have increased more during that time, Moeder points to no evidence introduced at the hearing that shows how much additional value Salin allegedly could have added. This lack of evidence supports the probate court's finding that Moeder "presented no competent evidence that some other approach would have been better." (App. 28-29.)

[39] It seems that by pointing to certain facts, or the absence of certain facts, Moeder asks us to infer that wrongdoing occurred. Mere facts and assertions, however, are not evidence of wrongdoing. Our review of the record shows that Moeder failed to support her bare assertions with competent evidence of legal wrongdoing or harm. Based on this absence of evidence, the probate court's

---

[7] Salin's accounting, which was ultimately approved by the court, listed the initial portfolio value as $686,904.65. (App. 234.) The total value on the date of filing was $751,214.30. (App. 234.)

conclusory statement that Moeder "offered no evidence that Salin did anything wrong or that the Trust suffered any loss as a result of Salin's actions" was not clearly erroneous. (App. 31.)

[40] The probate court's findings of fact and conclusions thereon were not clearly erroneous.

## Attorney's Fees

[41] Moeder also argues that the probate court abused its discretion when it ordered her to pay Salin's reasonable attorney's fees and costs because she brought or continued to litigate a groundless claim.

[42] The probate court's attorney's fees award was made pursuant to Indiana Code section 34-52-1-1(b), which provides:

> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.
>
> I.C. § 34-52-1-1(b).

[43] The court's decision to award attorney's fees under Indiana Code section 34-52-1-1 is subject to a multi-level review. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 843 (Ind. 2012). First, the trial court's findings of fact are reviewed under the clearly erroneous standard. *Id.* Next, the court's legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed *de novo*. *Id.* Finally, the court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion. *Id.* A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances or if the court has misinterpreted the law. *Id.*

[44] A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. *Branham Corp. v. Newland Res., LLC*, 17 N.E.3d 979, 992 n.12 (Ind. Ct. App. 2014) (citing *Kahn v. Cundiff*, 533 N.E.2d 164, 167 (Ind. Ct. App. 1989), *aff'd*, 543 N.E.2d 627 (Ind. 1989)). A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. *Id.* A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. *Id.* "Bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will." *GEICO Gen. Ins. Co. v. Coyne*, 7 N.E.3d 300, 305 (Ind. Ct. App. 2014),

*trans. denied*.  A claim or defense is not, however, groundless or frivolous merely because the party loses on the merits.  *Smyth v. Hester*, 901 N.E.2d 25, 33 (Ind. Ct. App. 2009), *trans. denied*.

[45] Here, the probate court did not specify under which prong of Indiana Code section 35-52-1-1(b) it awarded the attorney's fees, but found that the evidence supported the award for two reasons: 1) the claims Moeder raised at the hearing focused on Salin's actions taken between 2007 and the spring of 2009 and therefore the claims were barred by the two-year statute of limitations, and 2) even if the Moeder's claims were not time-barred, Moeder "offered no evidence that Salin did anything wrong or that the Trust suffered any loss as a result of Salin's actions." (App. 31.)  The court also rejected Moeder's claim that she pursued the litigation "in a good-faith effort to protect the interests of her brother," finding her claim "not credible." (App. 31.)  The court found that Moeder's action "eroded John's share of the Trust by forcing Salin as Trustee [to] incur the expense of litigating [Moeder's] objection." (App. 31.)  The court concluded that "in justice, [Moeder] must be required to reimburse the Trust for the attorney['s] fees and other litigation costs incurred by Salin in defending against [Moeder's] Objection, pursuant to Ind. Code § 34-52-1-1(b)." (App. 31.)

[46] The statute lists the grounds for awarding attorney's fees in the disjunctive; therefore, a litigant is required to demonstrate the existence of only one ground in order to justify an award of attorney's fees.  *Charles Downey Family Ltd. P'ship v. S & V Liquor, Inc.*, 880 N.E.2d 322, 328-29 (Ind. Ct. App. 2008), *trans. denied*.

Because we find it dispositive of Moeder's claims on appeal, we address only the court's conclusion that Moeder's claims were "frivolous, unreasonable and groundless, inasmuch as [Moeder] offered no evidence" of wrongdoing by Salin or resulting harm to the Trust. (App. 31.)

[47] As discussed above, Moeder raised an objection to Salin's accounting and alleged that Salin breached its fiduciary duties. Although she pointed at the hearing to several actions taken (or not taken) by Salin, she failed to provide the court with any competent evidence that such action constituted legal wrongdoing. Instead, Moeder relied on her own lay testimony that Salin's actions or omissions constituted imprudent management of the Trust assets. Overall, the value of the Trust grew under Salin's management, and Moeder offered no evidence that any other approach Salin could have taken would have resulted in a greater benefit. Because Moeder presented to the probate court no evidence to support her objection and claims, the court did not err in concluding that Moeder brought or continued to litigate a groundless claim. We therefore cannot say that the probate court abused its discretion in awarding Salin attorney's fees and cost incurred in defending against Moeder's groundless objection and claim.

## Amount of Attorney's Fees

[48] Moeder's next issue on appeal is that the probate court abused its discretion in ordering Moeder to pay $106,001.28 in attorney's fees to Salin.

[49] We review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard. *St. Mary Med. Ctr. v. Baker*, 611 N.E.2d 135, 137 (Ind. Ct. App. 1993), *reh'g denied, trans. denied*. What constitutes reasonable attorney's fees is a matter largely within the trial court's discretion. *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 634 (Ind. Ct. App. 1995). Since the judge is considered an expert, we continue to adhere to the view that the judge may judicially know what constitutes a reasonable fee. *Id.*

[50] Moeder argues that the probate court abused its discretion for four reasons: 1) the probate court did not enter findings of fact and conclusions thereon to support its order; 2) Salin's application for attorney's fees was not supported by an affidavit attesting to the reasonableness of the fees; 3) Salin chose to proceed to the hearing rather than filing a motion for summary judgment on its affirmative defense that Moeder's claims were time-barred; and 4) Salin had two attorneys present during the hearing, thus unnecessarily increasing Salin's litigation costs.

[51] Salin filed with the probate court a detailed list of attorney's fees incurred in defending against Moeder's groundless objection. Salin also redacted fees and costs not directly related to this litigation. On appeal, Moeder presents no citations to authority that support her arguments that the court's order was deficient or that Salin's request was unreasonable. Accordingly, these arguments are waived. *See* App. R. 46(A)(8).

Because the probate court may use its expertise to determine what constitutes reasonable attorney's fees and Salin provided evidence of the fees it incurred, the court did not abuse its discretion in awarding the sum of $106,001.28 in attorney's fees and costs. (App. 34.)

## Appellate Attorney's Fees

In its brief, Salin asks this Court to award it attorney's fees for defending against Moeder's claims on appeal.

Indiana Appellate Rule 66(E) provides that this Court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." App. R. 66(E). Generally, "a discretionary award of damages has been recognized as proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind. 1987). In considering a request for appellate attorney's fees, we use extreme restraint because of the potential chilling effect upon the exercise of the right to appeal. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003).

Salin argues that this Court should award it appellate attorney's fees because Moeder "has offered nothing but a rehash of the specious arguments that Judge Zore rightly rejected" and that by pursing this appeal, she "is imposing huge litigation expenses on a fund her mother placed in trust to provide care for her disabled son John." (Appellee's Br. 50.)

[56] The probate court did not err in finding that Moeder's claims were groundless and the court did not abuse its discretion in awarding Salin attorney's fees and costs because Moeder brought or continued to litigate a groundless claim. However, we are not convinced that Moeder, facing personal liability for a discretionary $106,001.28 attorney's fee award, instituted this appeal with the "meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay" our standard requires. *Orr*, 512 N.E.2d at 152. And we believe that an award of appellate attorney's fees in this case would likely create a "chilling effect" on future litigants who also face personal liability for substantial attorney's fees awards made at the discretion of trial courts. *Thacker*, 797 N.E.2d at 346. Furthermore, we observe that Moeder, as the contingent remainder beneficiary, also stands to benefit from the Trust, should she survive her brother. We are thus not convinced by Salin's argument that Moeder brought an appeal only to drain Trust assets that would otherwise benefit her brother.

[57] Salin's request for appellate attorney's fees is denied.

# Conclusion

[58] The probate court did not abuse its discretion in granting Salin's motion for a one day continuance. The probate court's findings and conclusions were not clearly erroneous. The probate court did not err in concluding that Moeder brought or continued to litigate a groundless claim and did not abuse its

discretion in awarding Salin $106,001.28 in attorney's fees and costs. Salin's request for appellate attorney's fees is denied.

Affirmed.

Robb, J., and Brown, J., concur.