
FILED

Oct 17 2025, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



I N T H E

# Court of Appeals of Indiana

Kenneth L. Beckman,

*Appellant-Respondent*

v.

Penni R. Beckman,

*Appellee-Petitioner*

---

October 17, 2025

Court of Appeals Case No.
24A-DN-2701

Appeal from the Warrick Superior Court

The Honorable Greg A. Granger, Judge

Trial Court Cause No.
87D02-2003-DN-418

---

**Opinion by Judge Bradford**
Judges Weissmann and DeBoer concur.

**Bradford, Judge.**

## Case Summary

[1] Kenneth and Penni Beckman were married on April 27, 2014. Penni petitioned for divorce on March 19, 2020. For reasons known only to the parties, their divorce has been a long and arduous process, with the parties vigorously litigating their divorce for a period of more than four years. On October 9, 2024, the trial court issued an order dissolving the parties' marriage and dividing their assets. Kenneth challenges various portions of the trial court's order. We affirm in part, reverse in part, and remand to the trial court with instructions.

## Facts and Procedural History

[2] Kenneth and Penni were married on April 27, 2014. Prior to their marriage, Kenneth and Penni had executed a premarital agreement (the "PMA"). The PMA indicated that in the event that the parties' marriage should be terminated by any means other than death,

> (a) Each respective party's individual property shall remain the sole property of that individual.
>
> (b) Any jointly held property whether real or personal shall be equally divided between the parties, if the same can be divided, or if the property can not be divided, then the property shall be sold and the net proceeds equally divided between the parties.

Appellant's App. Vol. II p. 90.

Both Kenneth and Penni entered the marriage with significant personal property, and they agreed, by virtue of the PMA, that each person's property would remain their own in the event of divorce. Kenneth's property included a business known generally as Beckman Construction. Penni's property included a business known as CNC Safety, LLC ("CNC"), which Penni had incorporated in January of 2014, and its articles of incorporation designated Penni as its sole member.

Penni filed for divorce on March 19, 2020. Over the course of more than four years, the parties "vigorously" litigated their divorce, with Kenneth challenging, among other things, the validity of the PMA and the ownership of CNC. Appellant's App. Vol. II p. 73. On October 9, 2024, the trial court issued a forty-nine-page order dissolving the parties' marriage and dividing the parties' assets. The trial court found that the PMA was valid and enforceable and that Penni was the sole owner of CNC.

In dividing the parties' marital assets, the trial court awarded Kenneth K&P Homes, LLC ("K&P"), a business that had been started by the parties during the course of their marriage, and ordered Kenneth to make an equalization payment to Penni, effectively buying her interest in the company. The trial court also awarded Penni $200,000.00 in attorney's fees, finding that Kenneth had threatened to "drag" the divorce proceedings out to harm Penni financially and had "commenced an unrelenting, malevolent course of conduct to effectuate or carry out his threats." Appellant's App. Vol. II p. 70. The trial court further found that the divorce proceedings should not have cost either

party more than $20,000.00 but, due to Kenneth's dilatory and bad-faith trial tactics, Penni had incurred "attorney fees and expenses totaling $267,383.86[.]" Appellant's App. Vol. II p. 72.

## Discussion and Decision

### I. Attorney's Fees

Kenneth contends that the trial court abused its discretion in awarding Penni $200,000.00 in attorney's fees, arguing that the parties had agreed in the PMA not to seek attorney's fees. Alternatively, Kenneth argues that it was Penni, not him, who caused the divorce proceedings to drag out. "A trial court may award attorneys' fees in marital dissolution actions, and whether such fees are awarded are left to the broad discretion of the trial court." *Haggarty v. Haggarty*, 176 N.E.3d 234, 251 (Ind. Ct. App. 2021) (internal citation and quotation omitted).

With respect to an award of attorney's fees, the PMA explicitly states,

> If such marriage is terminated by judicial decree or by any means other than death, then and in such event, *each party agrees that he or she shall not demand, claim, take or receive from the other any property*, alimony support money or *attorney's fees* to which he or she might otherwise be entitled by any reason of any rights arising out of the marital relationship.

Appellant's App. Vol. II pp. 89–90 (emphases added). However, the trial court's extensive factual findings make it clear that the trial court did not award Penni attorney's fees in connection to any right arising out of the marital

relationship, but rather as a sanction on, what the trial court found to be Kenneth's frivolous, unreasonable, and groundless litigation posture and his act of litigating the parties' divorce in bad faith.

[8] Nothing in the PMA can be read as limiting the remedies or sanctions available to the trial court for the frivolous assertions, bad faith, or misconduct by either of the parties. Moreover, a trial court "may in its inherent equitable power, determine that an award of attorney's fees is appropriate under the circumstances of a particular case after a determination that a party has acted in bad-faith and such conduct is calculatedly oppressive, obdurate, or obstreperous." *Matter of Est. of Kroslack*, 570 N.E.2d 117, 121 (Ind. Ct. App. 1991). We have recently interpreted this equitable power to extend to allow a trial court "to grant attorney fees even *where not specifically allowed by statute, agreement, or stipulation*." *Hernandez-Jarquin v. Nievez-Salazar*, 2025 WL 432838 *8 n.12 (Ind. Ct. App. February 7, 2025) (emphasis added); *see also Haggarty*, 176 N.E.3d at 251 (rejecting wife's claim that an award of attorney's fees to husband was barred by the parties' premarital agreement, finding that the premarital agreement had only disallowed an award of attorney's fees for a particular reason and did not disallow an award of attorney's fees imposed in response to dilatory actions by wife).

[9] Indiana Code section 34-52-1-1(b) provides:

> In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

> (1) brought the action or defense on a claim or
> defense that is frivolous, unreasonable, or groundless;
> (2) continued to litigate the action or defense after the
> party's claim or defense clearly became frivolous,
> unreasonable, or groundless; or
> (3) litigated the action in bad faith.

[10] A trial court's "decision to award attorney's fees under Indiana Code section 34-52-1-1 is subject to a multi-level review." *In re Moeder*, 27 N.E.3d 1089, 1101 (Ind. Ct. App. 2015), *trans. denied*.

> First, the trial court's findings of fact are reviewed under the clearly erroneous standard. Next, the court's legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed *de novo*. Finally, the court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances or if the court has misinterpreted the law.

> A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. Bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will. A claim or

> defense is not, however, groundless or frivolous merely because the party loses on the merits.

*Id.* at 1101–02 (emphasis in original, internal citations and quotation omitted).

[11] In awarding Penni attorney's fees, the trial court found that Penni's request for attorney's fees "is based specifically on the Husband's continued maintenance of a cause of action that is frivolous, unreasonable, or groundless; has produced and filed other miscellaneous pleadings violative of [Trial Rule] 11[1] because of the untrue assertions therein and misrepresenting the facts of this cause, in violation of [Trial Rule] 11." Appellant's App. Vol. II p. 85. Kenneth argues that the trial court's findings that he had "prolonged these proceedings turns the record on its head[,]" claiming that it had been Penni, not him, who had prolonged the proceedings. Appellant's Br. p. 20. We disagree.

[12] Kenneth claims that "[m]uch of the problem seems to have arisen on this issue because the trial court's findings of fact on the award of attorneys fees are verbatim restatements of the Wife's proposed findings of fact." Appellant's Br. p. 20. Kenneth claims that we "should be skeptical of the findings that are nearly verbatim restatements of the Wife's proposed findings of fact." Appellant's Br. p. 21.

---

[1] Trial Rule 11(B) provides that "[a]ny person who falsifies an affirmation or presentation of fact shall be subject to the same penalties as are prescribed by law for the making of a false affidavit."

[13]     "When the trial judge signs the findings of fact and conclusions of law, they become the court's findings of fact and conclusions of law." *Ind. Tri-City Plaza Bowl, Inc. v. Glueck's Est.*, 422 N.E.2d 670, 674 (Ind. Ct. App. 1981). "The court is responsible for their correctness." *Id.* "If the proposed findings of fact and conclusions of law did not state the facts as the trial court found them to be, it would not have adopted them as its own." *Id.* The Indiana Supreme Court has held that

> [i]t is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. The trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning. We recognize that the need to keep the docket moving is properly a high priority of our trial bench. For this reason, we do not prohibit the practice of adopting a party's proposed findings. But when this occurs, there is an inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court. This is particularly true when the issues in the case turn less on the credibility of witnesses than on the inferences to be drawn from the facts and the legal effect of essentially unchallenged testimony.

*Prowell v. State*, 741 N.E.2d 704, 708–09 (Ind. 2001). Thus, "our confidence that findings of fact and conclusions of law are the result of a considered judgment by the trial court is diminished when the trial court adopts verbatim the proposed findings of fact and conclusions of law submitted by one of the parties[.]" *Pfadt v. Wheels Assured Delivery Sys., Inc.*, 200 N.E.3d 961, 971 (Ind. Ct. App. 2022).

[14]     In this case, both parties submitted proposed findings of fact and conclusions thereon. In its extensive order dissolving the parties' marriage, however, the trial court did not wholesale adopt either of the parties' proposed findings but rather adopted some findings that were included in Penni's proposed order and some that were included in Kenneth's proposed order. The trial court also added its own language to some of the adopted findings, deleted language from some of the adopted findings, and wrote some of its own findings. These facts suggest that in crafting its order, the trial court considered both of the parties' positions together with the evidence and adopted the proposed findings that it determined were supported by the evidence. Our confidence in the trial court's order is not diminished by this approach. *See In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005) (noting that the court's confidence in the trial court's findings was not diminished by the court's adoption of proposed findings when the trial court adopted some of husband's proposed findings, some of wife's proposed findings, and took time after the submission of the parties' proposed findings in crafting its order). While we agree with Kenneth that a wholesale adoption of a party's proposed findings can, in some instances, diminish our confidence in a trial court's order, that was not what happened here.

[15]     In arguing that it was Penni who prolonged the proceedings and not him, Kenneth disputes the nature of the trial court's findings regarding two motions for summary judgment. The parties presented their arguments below as to the validity and/or frivolity of their tactics regarding these motions. The trial court

ultimately rejected Kenneth's arguments that it was Penni and not him that had acted with dilatory tactics in this regard.

[16] Moreover, it is of note that Kenneth does not challenge statements attributed to him that indicated a plan to drag the proceedings out for the purpose of harming Penni financially. Penni averred that

> 3. The first time Kenneth threatened to divorce me … he told me he would take my business, meaning CNC Safety, and everything that goes with it.
>
> ****
>
> 6. Over the course of our marriage, Kenneth threatened to file for divorce and would say to me "I'll take your business" and/or "I'll take everything".
>
> 7. After I filed for divorce on March 19, 2020, Kenneth said that he "wants everything" and that he "would drain my money in lawyer fees" and "drag it out as long as it took to drain my funds".

Ex. Vol. XXX p. 179. The trial court cited Penni's affidavit as proof of the threats made by Kenneth and found that "[w]ith the commencement of this cause, [Kenneth] commenced an unrelenting, malevolent course of conduct to effectuate or carry out his threats" to Penni and "[Kenneth's] unrelenting, malevolent course of conduct carry [*sic*] out the threats that he had made to" Penni. Appellant's App. Vol. II p. 70. The trial court further found that Kenneth's threats

establish that his conduct throughout the entire proceeding is exhibited a course of conduct in direct violation of IC § 34-52-1-1 together we've seen a number of outright lies that he has testified to, together with the fact that he has offered not less than thirty (30) instances of outright fallacious or perjurious testimony throughout the course of this cause. This number of outright fallacious or perjurious testimony could increase into more than a hundred when the Court considers all of the "I don't know" and "I don't remember" responses (recognizing he utilized such avoidance testimony 292 times just in his deposition).

Appellant's App. Vol. II p. 70.

[17] The trial court further found that Kenneth had "attempted to shield his testimony from being reviewed" as potential perjury by stating that he had "believe[d] it" to be true. Appellant's App. Vol. II p. 71. The trial court found that Kenneth's "testimony is fatally flawed as to its credibility, because of his fallacious comments made by him and his attempts to mold his understanding of truth to be unique to him. Any testimony of [Kenneth] not corroborated by credible evidence cannot be accepted as credible on its face." Appellant's App. Vol. II p. 71. The trial court further found that Kenneth had "presented no evidence to refute the testimony of witnesses or [Penni's] evidence. [Kenneth's] only challenge was his testimony that the witnesses had lied." Appellant's App. Vol. II pp. 71–72.

[18] All told, Penni incurred "attorney fees and expenses totaling $267,383.86 in this cause." Appellant's App. Vol. II p. 72. The trial court determined, however, that given the complexity-level of this case, the parties "should not have incurred expenses and attorney fees exceeding $20,000.00 each" but that

because Kenneth had, over the course of the proceedings, "made allegations and assertions, without any basis," Penni had incurred "tens of thousands of dollars in performing substantial discovery in order to uncover the truth." Appellant's App. Vol. II p. 72.

[19] The trial court further noted that Kenneth had "vigorously litigated for 1518 days over the issue of validity of the PMA and in the waning hours of the trial of this case, [he] first declared that the PMA was not disputed but whether [Penni's] solely owned business ([CNC]) was included in it." Appellant's App. Vol. II p. 73. The trial court noted that had Kenneth admitted the validity of the PMA at the outset of the proceedings, "it can be inferred that the fees and expenses incurred by the parties would have been a fraction of those caused by [Kenneth's] course of conduct herein." Appellant's App. Vol. II p. 73. The trial court noted that Kenneth had disputed the PMA's validity for over four years before abruptly changing course and accepting its validity. (Appellant's App. Vol. II p. 73) Ultimately, the trial court determined that "four years and over two hundred thousand dollars in fees and expenses later, support [Penni's] contention that the position of [Kenneth] in this cause ha[s] been frivolous, unreasonable, and/or groundless, and certainly in furtherance of his avowed intent to use these proceedings to punish [Penni] financially." Appellant's App. Vol. II p. 73.

[20] The trial court found that "[t]he evidence establishes that [Kenneth] … engaged in subterfuge to conceal assets from [Penni] and the Court." Appellant's App. Vol. II p. 76. As the Indiana Supreme Court has noted,

this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (internal quotation omitted). "Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* (internal quotation and brackets omitted).

[21] The trial court observed the parties' demeanor and scrutinized their testimony and trial tactics over the course of more than four years. Kenneth has failed to convince us that the record positively requires "the conclusion contended for by" him, and reversal is therefore not warranted. *See id.* In light of the trial court's conclusion that Penni had incurred significant litigation expenses that had been necessitated by Kenneth's conduct, we cannot say that the trial court abused its discretion in awarding $200,000.00 attorney's fees, which only represented a part of the total fees incurred, to Penni. *See Haggarty*, 176 N.E.3d at 251–52 (awarding husband attorney's fees for fees incurred as a result of additional litigation expenses created by wife's dilatory tactics); *Goodman v. Goodman*, 94 N.E.3d 733, 741, 751 (Ind. Ct. App. 2018) (affirming award of attorneys' fees because, in part, husband had "complicated and delayed"

litigation by failing to respond properly to discovery and had dissipated marital assets), *trans. denied*.

## II.  Award of K&P to Kenneth

[22]  Kenneth next contends that the trial court erred in awarding K&P to him, rather than ordering that it be divided or sold.

> The division of marital assets is a matter within the sound discretion of the trial court.  When a party challenges the trial court's division of marital property, he must overcome a strong presumption that the court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal.  When we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the trial court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses.  An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law or disregarded evidence of factors listed in the controlling statute.  Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court.

*Webb v. Schleutker*, 891 N.E.2d 1144, 1153–54 (Ind. Ct. App. 2008) (internal citations and quotation omitted).  Moreover, "[p]remarital agreements are legal contracts entered into prior to marriage to settle the interest each spouse has in the property of the other and therefore, standard principles of contract formation and interpretation apply to such agreements."  *Thompson v. Wolfram*,

162 N.E.3d 498, 503 (Ind. Ct. App. 2020) (internal citation omitted). "As premarital agreements are favored by the law, they will be liberally construed to realize the parties' intentions." *Id.* at 504 (internal citation omitted).

[23] In arguing that the trial court abused its discretion in awarding him K&P, Kenneth asserts that the trial court's award violated the parties' PMA. Again, with respect to jointly held property, the PMA indicated that, in the event that the parties' marriage was terminated by any means other than death, then "[a]ny jointly held property whether real or personal shall be equally divided between the parties, if the same can be divided, or if the property can not be divided, then the property shall be sold and the net proceeds equally divided between the parties." Appellant's App. Vol. II p. 90. The parties do not seem to dispute that the trial court divided all other non-K&P marital property equally. Kenneth's argument on appeal focuses on the trial court's award of K&P solely to him.

[24] Kenneth argued below that both CNC and K&P were marital assets and argued that CNC should be awarded to Penni and K&P should be awarded to him. The trial court, however, found that CNC was not a marital asset, but that K&P was. With regard to K&P, the trial court found as follows:

> 156. During the course of the marriage, the parties formed a business entity, K&P homes, LLC (herein after K&P) on September 5, 2017.
>
> 157. K&P is a rental housing company that participates in Section 8 housing programs to provide rental units for low[-]income housing needs in Warrick County, Indiana.

158.    Each party made capital contributions to the formation of K&P and it was the intent of the parties that said capital contributions were to be equal, and therefore, their ownership interests would be equal.

159.    K&P owns the following assets:
   a.    605 N. First Street, Boonville, Indiana
   b.    721 S. Eighth Street, Boonville, Indiana
   c.    1301 E. Walnut, Boonville, Indiana
   d.    315 E[.] Oak Street, Boonville, Indiana
   e.    317 E. Oak Street, Boonville, Indiana
   f.    621 E. Short Elm, Boonville, Indiana
   g.    313 S. Eighth St./327 Hudspeth Ave[.], Boonville, Indiana
   h.    919 Parkview Drive, Boonville, Indiana
   i.    1212 W. Walnut, Boonville, Indiana

160.    A formal appraisal summary dated November 29, 2022, identified the above properties to have a total appraised value of $1,247,000.00.  The parties accepted the appraised value as the gross value of the properties.

161.    K&P has a debt in the form of a line[-]of[-]credit note with a balance of $14,220.00 as of February 14, 2024, payable to Boonville Federal Savings Bank.  Wife presented evidence of an active effort to reduce the balance of this note over the course of this dissolution.

162.    Based upon the foregoing evidence, the Court determines the net value of K&P to be $1,232,780.00.

163.    K&P is determined to be a marital asset, subject to division in a just and reasonable manner.

164.    [Kenneth] is awarded all right title and interest in K&P Homes which will allow him to earn income despite his disability and will avoid him having to incur a significant tax assessment if

the properties were sold.

165.    [Penni] shall promptly cooperate in turning over all K&P property and access to all financial accounts and records of K&P to [Kenneth].  [Penni] shall promptly cooperate in signing any and all documents necessary to effectuate the transfer of her ownership in K&P and which are reasonably necessary to transition the control of K&P Homes including any documents necessary to transfer ownership of the bank accounts and assets of K&P.

166.    [Kenneth] shall hold [Penni] harmless from any and all indebtedness associated with K&P Homes.

167.    [Kenneth] is ordered to pay [Penni] her equity balancing payment in installments of: $75,000.00 within 45 days;
$125,000.00 within 90 days;
$200,000.00 within 135 days; and
$250,000.00 within 180 days.
representing her equitable interest in K&P Homes.

168.    [Kenneth] is entitled to make earlier or larger payments to satisfy this obligation.  Until such time as [Penni] has received the full award of this Order, [Kenneth] shall obtain or maintain an adequate life insurance policy, naming [Penni] as an insured, sufficient to cover her remaining interest under this Order.

Appellant's App. Vol. II pp. 66–68 (internal record citations omitted).

[25]    The trial court's findings regarding K&P incorporated some of Kenneth's proposed findings of facts, which had included the following:

178.    [Kenneth] testified that he did not want to sell any of the real estate owned by K&P.  Instead, he wanted to keep as much of the property held by K&P as he could because it would help

provide him as a source of income to help offset his loss of earnings due to his disability. Additionally, [Kenneth] testified that he did not want to absorb the substantial tax hit from selling those properties.

****

193....
   b. Award [Kenneth] all right title and interest in K&P free of any rights of [Penni] which will allow him to earn income despite his disability and will avoid him having to take a giant tax hit from selling the property.

194.   [Penni] shall promptly cooperate in turning over all K&P property and access to all financial accounts and records of K&P to [Kenneth]. [Penni] shall promptly cooperate in signing any and all documents necessary to effectuate the transfer of her ownership in K&P and which are reasonably necessary to transition the control of K&P of homes including any documents necessary to transfer ownership of the bank accounts and assets of K&P.

195.   [Kenneth] shall hold [Penni] harmless from any and all indebtedness associated with K&P Homes.

Appellant's App. Vol. IV pp. 207, 210.

[26]   Penni argues that because Kenneth had requested that the trial court award him K&P, he cannot argue on appeal that the trial court erred in doing so. For his part, Kenneth essentially asserts that because his argument below was based on his contention that both CNC and K&P were marital property and, given the trial court's determination that CNC was not, the trial court should have disregarded his request for K&P to be awarded solely to him. Kenneth supports

his assertion with the claim that CNC and K&P had roughly the same value. Thus, awarding K&P to him and CNC to Penni would effectively satisfy the parties' PMA, which again called for an equal division of marital property.

[27] We read the parties' PMA as requiring an equal division of the marital assets. If the trial court had found CNC to be marital property, we would tend to agree that Kenneth's proposal of awarding CNC to Penni and K&P to him would effectively satisfy the PMA. However, the trial court found that CNC was property that had been brought into the marriage by Penni and, by the terms of the PMA, was to remain Penni's sole property.

[28] Because K&P is marital property, the trial court was required, pursuant to the PMA, to divide its value equally between the parties. One way the trial court could have done this was to order that all of K&P's assets be sold and the proceeds split between the parties. To do so would have been counter to Kenneth's claim that he wished to retain some, if not all, of K&P's assets. The trial court therefore took a different approach, that being to award all of K&P's assets to Kenneth but to order that he make an equalization payment to Penni, *i.e.*, effectively awarding both parties an equal share of the value of K&P's assets. We cannot say that the trial court failed to honor the parties' intent for an equal distribution of the marital assets, as stated in the PMA, by adopting this approach. The trial court, therefore, did not err in awarding Kenneth all of K&P's physical assets, *i.e.*, the real estate, but ordering that he make an equalization payment of one-half of K&P's value to Penni. In the end, both parties received an equal division of K&P's worth.

[29] Kenneth alternatively argues that the trial court erred in calculating Penni's one-half share of K&P. On this point, we agree with Kenneth. The trial court found that the parties had an equal ownership interest in K&P and found the net value of K&P to be $1,232,780.00. However, in ordering Kenneth to pay equalization payments of K&P to Penni, the trial court ordered Kenneth to pay Penni a total of $650,000.00, which represented more than half of the value of K&P. Given that the trial court specifically found that the parties' interests in K&P were equal, Penni's one-half interest of the $1,232,780.00 value of K&P was $616,390.00. Thus, we remand to the trial court to recalculate the equalization payments to total $616,390.00, *i.e.*, one-half of $1,232,780.00.

## III. Duplicate Value of Trailer

[30] Kenneth last contends that the trial court abused its discretion in awarding him the same trailer twice, arguing that the evidence establishes that the 2002 Tilt Trailer and the 2002 Imperial 2 axle were the same trailer. Penni agrees that "[t]he trial court awarded the same piece of personal property twice[.]" Appellee's Br. p. 43. We therefore reverse the trial court's award of the 2002 Tilt Trailer and the 2002 Imperial 2 axle to Kenneth as two separate pieces of property and remand to the trial court to recalculate its division of assets to rectify this error.

[31] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions.

Weissmann, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Fishers, Indiana


ATTORNEY FOR APPELLEE

S. Anthony Long
Long Law Office, P.C.
Boonville, Indiana