

**FILED**

Oct 22 2015, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Kristin R. Fox | Lily M. Schaefer |
| Fox Law Firm | Chad W. Nally |
| Mishawaka, Indiana | Genetos Retson & Yoon LLP |
| | Merrillville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric Brazier d/b/a Brazier Painting, | October 22, 2015 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 71A04-1406-CC-278 |
| v. | Appeal from the St. Joseph Superior Court |
| Maple Lane Apartments I, LLC, | The Honorable Jenny Pitts Manier, Judge |
| *Appellee-Defendant* | Trial Court Cause No. 71D05-1105-CC-375 |

**Robb, Judge.**

# Case Summary and Issues

[1] Eric Brazier sued Maple Lane Apartments I, LLC ("Maple Lane"), claiming he had performed over $60,000 in painting services at Maple Lane's request for which he had not been paid. Following a five-day bench trial, the trial court entered judgment in favor of Maple Lane and imposed sanctions against Brazier's counsel in the amount of $5,000 toward Maple Lane's attorney fees.

Brazier now appeals, raising several issues for our review, which we have restated as: 1) whether the trial court erred in denying his motion for summary judgment; 2) whether the trial court erred in its evidentiary ruling on certain exhibits proffered by Brazier; 3) whether the trial court's judgment is clearly erroneous; and 4) whether the trial court erred in imposing sanctions. Concluding there was no error in any respect, we affirm.

## Facts and Procedural History

[2] Maple Lane consists of 396 apartments in 100 buildings and a clubhouse in South Bend, Indiana. Sometime prior to 2006, Maple Lane hired Brazier to do interior painting work at the complex on an as-needed basis. Sue Papaj, who became Maple Lane's property manager in 2006, was Brazier's primary contact. She would apprise Brazier of vacant apartments, and he would paint the interior for approximately $160 per apartment. In addition, Papaj occasionally sought permission from her boss for Brazier to perform "extra work," which included such things as cleaning gutters, painting common areas, and exterior painting. Transcript at 58. In 2009, Brazier was asked to repair and paint the wood around two bay windows on the clubhouse and to paint the picture windows, the common door frame, and the apartment numbers on seven buildings on Norway Maple Court. He was then asked to paint the exterior windows on a few other buildings that were in bad condition (collectively, the "Clubhouse Project").

[3] Typically, Brazier would handwrite invoices for the work he did and submit them to Papaj within two weeks of completing the work. The date on the invoice would reflect the date he turned the invoice in rather than the date he did the work. Brazier did not keep copies of the invoices he submitted to Maple Lane. Papaj reviewed the invoices, initialed them to indicate payment should be made, and sent them to Maple Lane's corporate office in Chicago for payment. Checks were sent directly to Brazier.

[4] In early 2010, Maple Lane instructed Papaj to stop using Brazier's services. When Papaj called Brazier to let him know that his services would no longer be required, she told him to finish up what he was doing and bring her any unpaid invoices. Brazier delivered a few invoices to Papaj which she initialed and sent to Maple Lane. Papaj believed Brazier had submitted, and she had initialed, invoices totaling approximately $3,200 that Maple Lane ultimately did not pay. At the end of March or beginning of April, Brazier brought approximately 100 invoices to Papaj for exterior work he claimed to have done on every building in the complex, charging between $525 and $550 for each building (the "Bay Window Project"). He indicated he started this project in 2008 or 2009; Papaj claimed Brazier was never asked to, and in fact did not do, this work. Papaj did not initial the invoices, but she did send them on to Maple Lane.

[5] On May 12, 2011, Brazier filed a Verified Complaint on Account against Maple Lane, seeking payment of $63,995. Attached to the complaint was a summary of Brazier's invoices to Maple Lane from December 2008 to April 2010, showing the invoice number, amount, and whether it had been paid. Also

attached to the complaint were 114 allegedly unpaid invoices dated from June 1, 2009 to April 30, 2010, including ninety-nine invoices all dated April 30, 2010, for the Bay Window Project. Appellant's Appendix at 36-61. Maple Lane filed its answer on July 13, 2011.

[6] Brazier filed a motion for partial summary judgment contending, in part, Maple Lane's answer was a judicial admission that the invoices for the Bay Window Project were due and owing. Following a hearing, the trial court denied the motion:

> [Brazier] too narrowly construes [Maple Lane's] Answer as an acknowledgement by [Maple Lane]—a judicial admission as is claimed by [Brazier]—that [Brazier's] invoices are accurate and that the work described in each invoice was actually performed. [Brazier] takes an inartfully drafted answer and construes it too readily as an admission. . . .
> * * *
> Beyond that fact, [Brazier] has failed to show the absence of a genuine issue of fact. It appears clear that many of the numerous invoices, including what would appear to be most if not all of the invoices dated April 30, 2010, appear to be the same invoice, reproduced over 100 times, differing only by the apartment building or unit at which services were alleged to have been provided. There are numerous inferences that may be drawn from this evidence, including inferences that would stand to defeat [Brazier's] claim. Thus, [Maple Lane] is not obligated to come forth with evidence to defeat [Brazier's] Motion. Nonetheless, the evidence designated by [Maple Lane] is sufficient to raise a question of fact concerning [Brazier's] billing.

*Id.* at 9-10.

[7] During the discovery process, Maple Lane filed a motion to compel discovery and for sanctions against Brazier. The trial court did not rule on the motion before trial. Throughout the litigation, Brazier and his counsel referred to the invoices attached to the complaint as "copies" of the invoices he had submitted to Papaj and Maple Lane. It was determined for the first time at trial, however, that the "copies" were actually created by Brazier for the purpose of litigation after consulting with counsel. Maple Lane renewed and supplemented its motion for sanctions during trial.

[8] At the request of the parties, the trial court issued findings of fact and conclusions thereon after the conclusion of the trial. In large part, the trial court's findings came down to a credibility call, as the trial court noted the main witnesses—Brazier and Papaj—gave testimony that was "often and grossly wholly contradictory and irreconcilable. Effectively, each was testifying that the other was lying." *Id.* at 16. Ultimately, the trial court determined there were numerous issues with respect to Brazier's credibility—including his "poorly organized and almost wholly idiosyncratic" recordkeeping, *id.* at 13, his poor memory of events, and irregularities with regard to the timing and amount of the Bay Window Project invoices—and further determined "Papaj was a credible witness." *Id.* at 16. The trial court concluded "Brazier has not proven by a preponderance of the evidence that he was authorized to perform or that he even did perform the Bay Window Project. The Court concludes that this work was not authorized (beyond the Clubhouse Project) and was not performed." *Id.* at 20. Accordingly, the trial court entered judgment for Maple

Lane and against Brazier on Brazier's complaint. The trial court also determined that sanctions against Brazier and/or his counsel were appropriate, but held an order on such sanctions under advisement until Maple Lane had an opportunity to submit an affidavit of attorney fees and an "explanation of the sanctions it believes the Court should consider." *Id.* at 22.

[9] Following the entry of judgment against him, Brazier filed a motion to reconsider and motion to correct error. Pursuant to the court's order, Maple Lane filed an explanation of the sanctions it deemed appropriate, seeking attorney fees incurred from the time of Brazier's motion for summary judgment through trial and additional sanctions against Brazier's counsel for violations of Trial Rule 11(A). In a single order, the trial court denied Brazier's motion to reconsider and motion to correct error and imposed a sanction against Brazier's counsel of $5,000, "which amount will alleviate only a modest amount of the expense incurred by [Maple Lane] as a result of the conduct and lack of candor of [Brazier's] counsel." *Id.* at 26. Brazier now appeals.

# Discussion and Decision

## I. Brief of Appellant

[10] At the outset, we must note several significant deficiencies in the "Corrected" Brief Brazier filed with this court.[1] Brazier initially filed his brief on December

---

[1] We note two other deficiencies in the preparation of this appeal that hindered our review. First, despite the court reporter's representation to this court in a motion for extension of time to file the transcript that there

19, 2014. The brief contained a one-page Table of Contents—showing three headings under the Argument section all beginning on page 18—and a four-page Table of Authorities. On December 31, 2014, Brazier filed a Motion to File Corrected Brief to Correct Table of Contents and Table of Authorities. In the motion, counsel alleged she had been unable to complete the brief even after two extensions of time "due to the length of time to review and cite to the voluminous transcript, exhibits, and post-trial filings of the numerous and complex issues on appeal," but had nonetheless filed a brief by the date ordered. She noted the Table of Contents and Table of Authorities in the brief "provide citations to incorrect page numbers and the correct authorities are not listed in alphabetical order." Therefore, she requested leave to file "a corrected Appellant's Brief limited to the Table of Contents and Table of Authorities *in order to provide the correct page numbers and correct authorities in alphabetical order. Brazier will make no changes to other parts of the Brief.*" (Emphasis added.) This court granted Brazier's motion, directing him to file an Amended Appellant's Brief "in order to correct the Table of Contents and Table of Authorities . . . . *No substantive changes shall be made to the Amended Appellant's Brief.*" (Emphasis added.) Brazier timely filed his Corrected Brief of Appellant on March 2, 2015.

---

were 750 pages of exhibits to be copied and bound, the materials transmitted to this court did not include exhibit volumes, nor does our docket reflect that exhibit volumes were tendered. *See* Ind. Appellate Rule 29(A). Brazier included in his appendix some, but not all, of the exhibits. Second, the court reporter is to prepare a separately bound table of contents for the transcript. *See* App. R. 28(A)(8). Our file contains no such table of contents for the three-volume, 760-page transcript.

Appellate Rule 46(A) requires the following sections to appear in an appellant's brief:

> (1)   *Table of Contents.* The table of contents shall list each section of the brief, including the headings and subheadings of each section and the page on which they begin.
> (2)   *Table of Authorities.* The table of authorities shall list each case, statute, rule, and other authority cited in the brief, with references to each page on which it is cited. The authorities shall be listed alphabetically or numerically, as applicable.

Although Brazier's corrected brief does indeed include these sections, the Table of Contents is now *thirty-seven* pages long, followed by an eleven-page Table of Authorities. To illustrate how such lengthy tables are possible—despite the substantive portion of the brief being only forty-three pages—we have randomly selected an entry from the corrected Table of Contents, which appears under the "Argument" section:

> I. The trial Ct. improperly relied on Papaj's and Cory's mere "belief" (improper hearsay under Ind. Evidence Rule 801 and 802) that Brazier had already been paid for the invoices and the balance of the Account Stated as neither Papaj nor Corey had personal knowledge or any documentary evidence that the subject invoices making up the account stated were actually paid as, pursuant to Ind. Trial Rule 8(C), [Maple Lane] had the "burden of proving . . . payment" to Brazier of each of the unpaid invoices of Brazier's Account Stated and [Maple Lane's] required burden of proof of payment "is subject to the rules of evidence" [appearing on pages] 8-16, 24-6, 27, 28, 29, 31, 35, 37, 39

This is neither a proper heading, nor is it a heading appearing on any of the pages listed. In fact, the Argument section of the brief, which does not even begin until page 16, includes no headings or subheadings at all, despite the corrected Table of Contents listing headings A through ZZ, with multiple subheadings (and some sub-subheadings) under most headings. To the extent the Table of Contents makes sense at all, it represents, at best, an abject failure to understand the most basic requirements of appellate briefing. At worst, it is a blatant attempt to make additional argument without complying with the page and word limitations of a brief, *see* App. R. 44 (excluding the table of contents from the page and word length limits therein), and is in direct contravention of this court's order that Brazier make no substantive changes to the brief.

The Table of Authorities is not as egregious, but nonetheless fails to comply with the rule and this court's order. It includes, for instance, the following:

> *Hirsch v. Merchants Nat'l Bank & Trust Co. of Indiana*, 336 N.E.2d 833 (Ind. Ct. App. 1975) (providing eight percent interest in action for breach of lease). When the parties' contract does not provide an interest rate; therefore, the statutory interest rate of eight percent is applicable. (cited in App. 75-76) [appearing on page] 12

Corrected Brief of Appellant at iii-iv. [2]

---

[2] Although it is inappropriate to provide a record cite in the Table of Authorities, we must note this entire passage from the Table of Authorities actually appears on page 77 of the Appellant's Appendix as part of Brazier's proposed order granting partial summary judgment, which the trial court did not sign.

First of all, a Table of Authorities should simply be a list of cases, statutes and other authorities relied on in the brief, presented without further comment. Again, this appears to be an attempt to circumvent the page and word length limitations imposed by the rules and make additional substantive argument in violation of this court's order. Moreover, no case citations let alone *Hirsch*, appear on page 12 of the brief (which is, in fact, appropriate because page 12 is part of the Statement of the Facts, which should not include argument), nor is any reference to interest made on that page. And our review of the brief does not find *Hirsch* cited at all.[3] Thus, the Table of Authorities fails at its basic and only purpose of informing us of the cases cited in the brief and directing us to where in the brief a particular case is discussed.

None of this is within the letter or spirit of Appellate Rule 46(A), and we have therefore disregarded everything contained in the Table of Contents and Table of Authorities. What we cannot as easily disregard in our consideration of this

---

[3] In fact, *Hirsch* also does not appear in the Table of Authorities in the originally filed brief; neither do fifty-nine other cases listed in the corrected Table of Authorities. Forty-three of the newly included cases are allegedly cited on pages 14 and 22 of the brief, but in fact are not cited in the brief at all (no case cites appear on page 14 and only two case cites appear on page 22, neither of which are any of these cases). Instead, each of those forty-three cases are "cited in App. 537-597," Corrected Br. of Appellant at i-vii, which is Brazier's proposed findings of fact and conclusions of law. Again, it is inappropriate to provide a record cite in the Table of Authorities. Pages 14 and 22 of the brief mention, in passing, Brazier's proposed findings and conclusions. To the extent Brazier was trying by these references to incorporate argument in the form of the version of the findings and conclusions that he advanced, we note first that the trial court rejected his proposed findings, and second that a party may not present argument by incorporating by reference from a source outside the brief. *Pluard v. Patients Comp. Fund*, 705 N.E.2d 1035, 1037-38 (Ind. Ct. App. 1999), *trans. denied*.

appeal, however, are the deficiencies in Brazier's Argument section. Appellate Rule 46(A) states the following with respect to the Argument:

> (8) *Argument.* This section shall contain the appellant's contentions why the trial court or Administrative Agency committed reversible error.
> (a) The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.
> * * *
> (c) Each argument shall have an argument heading. If substantially the same issue is raised by more than one asserted error, they may be grouped and supported by one argument.

[17] As noted above, despite the numerous "headings and subheadings" shown in the Table of Contents, Brazier's Argument section—which, incidentally, is not itself labeled as such, and is distinguished from the Summary of Argument section only by the heading "Standard of Review"—contains *no* headings or subheadings. Not only are headings required by the rule, but they may have helped to focus Brazier's argument, which lacks the cogent reasoning also required by the rule. For instance, on two consecutive pages of the brief, essentially the same sentence appears four times. Corrected Br. of Appellant at 19-20. The content of two pages of the brief are replicated in whole several pages later. *Id.* at 25-27, 29-31. It appears arguments made in trial court filings may have been copied and pasted into the brief, leading to nonsensical statements such as "*[t]his Court* erred by failing to take mandatory judicial notice of the judicial admissions made in [Maple Lane's] Answer" and "*[t]his Court*

erred by failing to follow Indiana law[,]" *id.* at 21-22 (emphasis added), when *this court* has yet to do anything. What has most hindered our review, however, is that there is no rhyme or reason to the manner in which Brazier has presented his argument. Rather than clearly stating an issue and discussing it to conclusion, discussion of all the issues is intermixed throughout.

A party waives any issue for which it fails to provide argument and authority. *Westervelt v. Woodcock*, 15 N.E.3d 75, 76 n.1 (Ind. Ct. App. 2014). We do not have to consider an issue that is "too poorly developed or expressed to be understood." *Perry v. Anonymous Physician 1*, 25 N.E.3d 103, 105 n.1 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 2015 WL 4505132 (2015). However, we prefer to decide appeals on their merits when possible. *Omni Ins. Grp. v. Poage*, 966 N.E.2d 750, 753 (Ind. Ct. App. 2012), *trans. denied*. With the assistance of Maple Lane's distillation of the issues in its brief, we will address the merits of the arguments we can discern. Any issue not explicitly addressed herein is waived for failure to make a cogent argument.[4]

---

[4] Counsel's failures to follow even the simplest rules regarding the content of an appellate brief have made our review of this case unnecessarily difficult. We commend Maple Lane for largely refraining from comment on the quality of the brief and endeavoring to respond to the legal arguments. Were it within our purview to do so, we would order Brazier's counsel to verify to this court her attendance at a continuing legal education program regarding appellate practice before submitting any further briefs to this court. Although it would be within our purview to order counsel to show cause why she should not be held in contempt for willful violation of this court's order granting leave to amend the brief to correct technical errors only and specifically prohibiting any substantive changes, counsel does not appear to frequently represent clients on appeal nor has she been previously cited for poor briefing practices. Therefore, we have chosen not to take such extreme measures at this juncture. Nonetheless, we admonish counsel in the strongest possible terms to carefully review the appellate rules and fully conform her briefs to their requirements in the future.

# II. Motion for Summary Judgment

When reviewing a trial court's ruling on summary judgment, we apply the same standard as the trial court. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The initial burden is on the movant to demonstrate the absence of a genuine issue of fact as to a determinative issue. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). If the movant meets that burden, the burden shifts to the non-movant to come forward with contrary evidence showing an issue to be decided by the trier of fact. *Id.*

Our review is limited to facts designated to the trial court. *Meredith v. Pence,* 984 N.E.2d 1213, 1218 (Ind. 2013). All factual inferences are made in favor of the non-moving party, and we resolve all doubts as to the existence of an issue of material fact against the moving party. *Manley,* 992 N.E.2d at 673. The appellant has the burden of demonstrating that the summary judgment ruling was erroneous. *Amaya v. Brater,* 981 N.E.2d 1235, 1239 (Ind. Ct. App. 2013), *trans. denied.*

The trial court denied Brazier's motion for partial summary judgment upon finding Brazier failed to meet his burden of showing the absence of a genuine issue of material fact. Brazier contends the trial court erred in denying his motion for summary judgment because the trial court did not treat Maple Lane's answer as a judicial admission that he was asked to perform the

contested work, did perform the contested work, and that the invoices attached to his complaint were accurate and the amounts reflected therein were owed.

[22] A judicial admission "is an admission in a current pleading or made during the course of trial; it is conclusive upon the party making it and relieves the opposing party of the duty to present evidence on that issue." *Weinberger v. Boyer*, 956 N.E.2d 1095, 1105 (Ind. Ct. App. 2011), *trans. denied*. "Statements contained in a party's pleadings may be taken as true as against the party without further controversy or proof." *Lutz v. Erie Ins. Exch.*, 848 N.E.2d 675, 678 (Ind. 2006). "Opposing parties prepare their case on the assumption that facts admitted by other parties require no proof. For this scheme to work properly, parties must be entitled to rely on trial courts to treat admissions in pleadings as binding on the party making the admission." *Id.*

[23] Brazier's complaint—followed by Maple Lane's corresponding answer—alleged, in pertinent part:

> [Complaint ¶] 4. Although [Maple Lane] has engaged [Brazier] to provide work, labor, and material to [Maple Lane] at [Maple Lane's] Real Estate for a number of years, [Maple Lane] contracted for [Brazier] to provide work, labor, and material to [Maple Lane] at [Maple Lane's] Real Estate from June 2009 to April 2010. A summary and copy of [Brazier's] unpaid invoices are attached as group Exhibit A.

> [Answer ¶] 4. [Maple Lane] admits the allegation set forth in Rhetorical Paragraph 4 of [Brazier's] Complaint; that it contracted with [Brazier] for work, labor and materials to be performed at [Maple Lane's] real estate from June, 2009 to April,

2010; but denies the allegation set forth in Rhetorical Paragraph 4 of [Brazier's] Complaint that the invoices attached as group Exhibit A are unpaid.

[Complaint ¶] 5. [Brazier] performed the contracted work, provided the contracted labor, and provided the contracted materials at [Maple Lane's] Real Estate.

[Answer ¶] 5. [Maple Lane] admits the allegations contained in Rhetorical Paragraph 5 of [Brazier's] Complaint.

[Complaint ¶] 6. [Brazier] delivered [Brazier's] subject invoices to [Maple Lane] on or about the dates specified on each invoice.

[Answer ¶] 6. [Maple Lane] admits the allegations contained in Rhetorical Paragraph 6 of [Brazier's] Complaint.

[Complaint ¶] 7. [Maple Lane] has failed to pay [Brazier's] invoices in full.

[Answer ¶] 7. [Maple Lane] denies the allegations contained in Rhetorical Paragraph 7 of [Brazier's] Complaint.

[Complaint ¶] 8. The delinquent balance due and owing by [Maple Lane] to [Brazier] is $63,995.00 as of April 2010.

[Answer ¶] 8. [Maple Lane] denies the allegations contained in Rhetorical Paragraph 8 of [Brazier's] Complaint.

[Complaint ¶] 9. [Brazier] has demanded payment for the subject invoices and delinquent balance due from [Maple Lane] on several occasions, but [Maple Lane] has failed and/or refused to pay.

[Answer ¶] 9. [Maple Lane] admits the allegations contained in Rhetorical Paragraph 9 of [Brazier's] Complaint and states that the invoices attached as group Exhibit A have been double billed.

Appellant's App. at 27-28 (Complaint), 62-63 (Answer).

Brazier reads Maple Lane's answer to paragraphs 4 and 5 of his complaint to admit that Maple Lane contracted with Brazier to provide the work, labor, and material *for the Bay Window Project* and that he in fact performed the Bay Window Project. However, the complaint did not specifically allege Maple Lane contracted with Brazier to perform the Bay Window Project nor that Brazier performed the Bay Window Project. The complaint only alleges Maple Lane contracted with Brazier to perform *work* from June 2009 to April 2010 and that he did in fact perform the contracted work. The invoices attached to the complaint are not all for the Bay Window Project. There are also invoices for painting apartment interiors, cleaning gutters, and the Clubhouse Project. That Maple Lane admits it contracted with Brazier to perform work during those dates does not necessarily mean that it admits it contracted with Brazier to perform the Bay Window Project. Likewise, that Maple Lane admits Brazier performed the *contracted* work does not necessarily mean that it admits he performed the Bay Window Project. Thus, we agree with the trial court that Maple Lane's answer does not constitute a judicial admission that Brazier was hired to and did in fact perform the Bay Window Project.

As for the invoices, Brazier contends Maple Lane's answer is a judicial admission that "the invoices were valid, approved, and that [Maple Lane] was

liable for the subject invoices if they had not been paid." Appellant's Brief at 23. We, like the trial court, do not read Maple Lane's answer to judicially admit any such thing. Maple Lane admitted Brazier delivered invoices to it and demanded payment for what he believed the delinquent balance to be. However, Maple Lane denied that it has failed to pay Brazier in full for the work he performed at its request and that there is a delinquent balance in excess of $63,000. In short, as the trial court noted, Maple Lane's answer may be "inartfully drafted," Appellant's App. at 9, but under no reasonable reading of Maple Lane's answer—as a whole—can we say it operates as a judicial admission that all of the attached invoices represent work that was requested, performed, and approved for payment as billed.

[26] Brazier designated as evidence in support of his motion for summary judgment his complaint, Maple Lane's answer, and his counsel's affidavit of attorney fees. Given that Maple Lane's answer does not constitute a judicial admission that Brazier has met the elements of his claim, this evidence does not demonstrate the absence of a genuine issue of material fact as to the determinative issues of whether Brazier was asked to perform and did actually perform the Bay Window Project at the rate billed. Further, as the trial court noted, the invoices themselves raise questions of fact, given the irregularity of ninety-nine invoices all dated the same day and appearing to be reproductions of a single invoice.[5]

---

[5] There actually appear to be two invoices – one billing $525 that is reproduced 75 times, Appellant's App. at 36-55, and one billing $550 (adding an additional $25 charge for painting the door of the building) that is reproduced 24 times, *id.* at 55-61.

Finally, Maple Lane's designated evidence in opposition to summary judgment directly contradicts Brazier's contentions on the dispositive issue: Papaj's affidavit states that "[b]ased upon [her] observation of the buildings and the activities of [Brazier's] on-site employee, [Brazier] did not paint the bay windows and trim on the [sic] all the remaining 93 apartment buildings at Maple Lane Apartments." *Id.* at 90.[6] Brazier has failed to demonstrate that the trial court's denial of his motion for summary judgment was erroneous.

## III. Admission of Evidence

[27] The trial court declined to admit into evidence the approximately 100 invoices Brazier represented were "copies" of the invoices he submitted to Maple Lane for the Bay Window Project. These invoices represent the bulk of the work for which Brazier contends Maple Lane failed to pay him. Papaj testified that Brazier had indeed brought a stack of invoices to her for work he allegedly did on the windows of every building in the complex. However, it became clear during the course of trial that the invoices attached to the complaint and offered for admission at trial were not copies of those invoices Brazier had delivered to Maple Lane but were in fact created after his services were terminated, in anticipation of litigation, with the knowledge and assistance of his attorney. Brazier contends the trial court erred in denying admission of the invoices.

---

[6] Brazier contends it was erroneous to consider this statement because no evidence may be considered which contradicts a judicial admission. Because there was no judicial admission, this statement was properly considered on summary judgment.

[28]     We review the trial court's decision regarding admission of evidence for an abuse of discretion. *Weinberger*, 956 N.E.2d at 1104. The trial court abuses its discretion only when its decision is clearly against the logic and effect of the facts and circumstances before it. *Johnson v. Wait*, 947 N.E.2d 951, 962 (Ind. Ct. App. 2011), *trans. denied*. Even when the trial court erred in its ruling on the admissibility of evidence, we will reverse only if the error is inconsistent with substantial justice. *Weinberger*, 956 N.E.2d at 1104.

[29]     As the trial court noted during the trial, "in a case for payment on – for services rendered pursuant to an agreement, allegedly, with respect to the same, the existence of invoices is not an element – necessary element. . . . And since I believe the invoices, whatever their nature, are not an essential element, it does not obviate the claim or negate the claim if it's proven otherwise." Tr. at 483-84. Thus, even if the trial court erred in denying admission of the invoices, the ruling is not inconsistent with substantial justice. As Brazier testified at length about the Bay Window Project, he was still given the opportunity to prove his claim.[7] Therefore, the trial court did not abuse its discretion in denying admission of the invoices themselves, especially considering the questionable provenance and import of the invoices.

---

[7] Apparently, some of Brazier's workers also testified about the Bay Window Project, but their testimony was not transcribed.

# IV. Judgment for Maple Lane

[30] The trial court entered findings of fact and conclusions thereon pursuant to Trial Rule 52(A) at the request of the parties. When a party requests findings of fact, we apply a two-step review. *In re Moeder*, 27 N.E.3d 1089, 1097 (Ind. Ct. App. 2015), *trans. denied*. First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We do not reweigh the evidence or assess witness credibility, and we consider only the evidence most favorable to the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous; that is, if the record contains no facts or inferences supporting them. *Id.* at 1097-98.

[31] Our review of the record supports the trial court's finding that this was essentially a "he said, she said" controversy between Brazier and Papaj regarding what Brazier was asked to do and what he actually did at the complex. The trial court credited Papaj's testimony over Brazier's, and we will defer to that determination. Viewing the trial court's findings of fact through the lens of the trial court's credibility determinations, the evidence supports the trial court's findings and judgment.

[32] The trial court concluded "Brazier cannot recover under a theory of contractual liability or *quantum meruit* as he has not shown by a preponderance of the evidence that he has performed work, including the Bay Window Project, for

which he has not been compensated." Appellant's App. at 22.[8] The essential elements of a breach of contract claim are the existence of a contract, the defendant's breach, and damages to the plaintiff as a result. *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 531 (Ind. Ct. App. 2015), *trans. denied*. There seems to be no dispute that Brazier never had an express written contract with Maple Lane for any of the work he performed at the complex; rather, he performed work as agreed between himself and Papaj acting on behalf of Maple Lane. Crediting Papaj's testimony that she did not ask Brazier to paint the windows and trim on all 100 buildings in the complex, there was no agreement between Brazier and Maple Lane for Brazier to perform the Bay Window Project, and therefore no contract for Maple Lane to breach.

[33] As for a *quantum meruit* claim, there must be proof the plaintiff conferred a benefit upon the defendant at the express or implied request of the defendant, allowing the defendant to retain that benefit without restitution would be unjust, and the plaintiff expected payment. *Woodruff v. Ind. Family & Soc. Servs.*

---

[8] Brazier's complaint and, as the trial court noted, "belabored, disorganized presentation of his case" at trial, Appellant's App. at 19, leaves us without a clear understanding of the theory under which he was seeking recovery. At trial, it appears Brazier was proceeding under the theory of *quantum meruit*, as when Maple Lane moved to dismiss at the conclusion of Brazier's case-in-chief, Brazier's counsel stated, "I believe that Plaintiff has met its burden of proof in all counts, unjust enrichment, the invoices the 2009 [sic]. I think that he's proven all of the elements of unjust enrichment, detrimental reliance." Tr. at 754. In his brief, however, Brazier almost exclusively argues he was claiming an account stated and due. The trial court did not address an account stated theory in its judgment. "An account stated is an agreement between the parties that all items of an account and balance are correct, together with a promise, expressed or implied, to pay the balance." *Jackson v. Trancik*, 953 N.E.2d 1087, 1091 (Ind. Ct. App. 2011). An account stated arises only when each party to the transaction views the account as a final adjustment of the respective demands between them. *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning*, 699 N.E.2d 306, 310 (Ind. Ct. App. 1998). Because Maple Lane immediately disputed not only the amount of the invoices, but also that Brazier had performed the work reflected by the invoices, there are no admittedly valid claims on which to establish an account stated in this case.

*Admin.*, 964 N.E.2d 784, 791 (Ind. 2012), *cert. denied*, 133 S. Ct. 233 (2012). Again, crediting Papaj's testimony, Brazier failed to prove he conferred a benefit upon Maple Lane at Maple Lane's express or implied request. Papaj testified she never asked Brazier to perform the Bay Window Project and further testified Brazier did not in fact do that work. Although it is undisputed Brazier *was* asked to, and did, perform the Clubhouse Project, the evidence does not clearly support Brazier's claim that he was not paid for that work. The trial court's judgment is not clearly erroneous.[9]

## V.  Motion for Sanctions

[34]  Finally, Brazier's counsel challenges the sanctions the trial court imposed upon her for discovery violations relating to the invoices. The trial court's order states:

> Reduced photocopy invoices were attached as Exhibit A to the Verified Complaint. At trial, [Brazier's] counsel attempted to introduce the invoices themselves. The invoices were not admitted into evidence after the surprising and wholly unanticipated testimony by [Brazier] that the invoices he sought to introduce, which he and counsel repeatedly characterized as

---

[9] Brazier contends the trial court erred in failing to grant his motion to reconsider and motion to correct error. A motion to reconsider is a prejudgment motion; after final judgment, a motion to correct error is appropriate. *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998). Regardless of how Brazier styled his motion, it raises issues already discussed in this opinion regarding Maple Lane's alleged judicial admissions, admission of the invoices, and evidence supporting the judgment. Having found no error with respect to those issues, we need not discuss them further. To the extent the motion attempts to present "newly discovered evidence" in the form of affidavits from Brazier and Fox regarding the creation of the invoices prior to filing suit, there is no indication any of that information "could not have been discovered and produced at trial . . . ." Trial Rule 59(A)(1). The motion also raises an issue regarding the trial court's ruling on Maple Lane's motion for sanctions, which remained under advisement at the time this motion was filed. We will address the motion for sanctions separately.

"copies" of the invoices he had submitted to [Maple Lane], were, in fact, created by [Brazier] for purposes of this litigation after meetings with counsel. This testimony was so astonishing given the vehemence with which [Brazier's] counsel has continued to argue that the Court erred in not determining that [Maple Lane] had made a "judicial admission" of the authenticity of the invoices, that the Court, and likely [Maple Lane's] counsel, wholly expected [Brazier's] counsel to correct [Brazier's] testimony. Counsel did no such thing . . . .

* * *

[Brazier] needlessly based his trial strategy on documents and then failed to disclose the true nature of those documents to [Maple Lane], impacting the manner in which [Maple Lane] would likely respond to [Brazier's] Motion for (Partial) Summary Judgment, and depriving [Maple Lane] of the opportunity to the full and complete disclosure it sought through the discovery process.

[Brazier's] counsel is sanctioned in the sum of $5,000.00 . . . .

Appellant's App. at 25-26.

[35]     Maple Lane filed a motion to compel discovery and for sanctions under Trial Rule 37 and also requested sanctions pursuant to Trial Rule 11 in its memorandum following the trial court's final judgment. It is unclear on which basis the trial court ordered sanctions, and Brazier does not present a reasoned argument for why such sanctions were inappropriate, instead simply stating the request for sanctions "is wholly unwarranted, without legal support, factual support, cause, or merit and they are not warranted or reasonable." Corrected Br. of Appellant at 42. We note that, despite Maple Lane's outstanding motion

to compel discovery, there was no corresponding order entered compelling discovery at any time during this litigation.[10] By the time Maple Lane brought this to the trial court's attention, the trial had already been underway for three days. *See* Tr. at 401. Therefore, the imposition of Trial Rule 37 sanctions would be inappropriate. *See* Ind. Trial Rule 37(B)(2) ("If a party . . . *fails to obey an order* to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . .") (emphasis added).

[36] Trial Rule 11(A) requires every pleading or motion filed by a party represented by an attorney to be signed by the attorney, constituting "a certificate by him that he has read the pleadings; that to the best of his knowledge, information,

---

[10] Maple Lane's motion to compel and for sanctions was file-stamped by the trial court on September 4, 2012. Appellant's App. at 441. Although file-stamped, this motion is not reflected in the trial court's chronological case summary ("CCS"). *Id.* at 2. On September 5, 2012, Brazier's counsel filed the following CCS entry:

> [Brazier], by counsel, notifies the Court that [Maple Lane's] counsel advised [Brazier's] counsel via telephone today that [Maple Lane's] counsel will be notifying the Court that, in violation of the Indiana Trial Rules and St. Joseph County Local Rules, [Maple Lane's] counsel failed to notify [Brazier's] counsel by any form of communication of any discovery issues with [Brazier's] May 2012 answers and responses [to discovery] or [Brazier's] June 2012 answers and responses prior to filing [Maple Lane's] August 31, 2012 Motion to Compel requesting sanctions and that [Maple Lane's] counsel would report to the Court that she has already received [Brazier's] supplemental discovery that is the subject of [Maple Lane's] August 31, 2012 Motion to Compel.

*Id.* at 528. This entry is not reflected in the CCS, nor is any subsequent notice from Maple Lane to this effect. What is reflected in the CCS is that Brazier "files proposed order on motion to compel discovery and sanctions. Order files [sic] unsigned Parties have resolved these issued [sic]." *Id.* at 2. The trial court stated in its order imposing sanctions that a hearing had been scheduled on the motion to compel and for sanctions but was vacated and not reset. *Id.* at 26.

Regardless of what actually happened—and on this record, it would be pure speculation to try to ascertain—the relevant fact is that Maple Lane did nothing to move its motion to compel forward until it filed a supplement to its motion in the midst of trial, and no order was ever entered compelling Brazier to supplement his discovery responses.

---

and belief, there is good ground to support it; and that it is not interposed for delay." The trial court has discretion to impose sanctions under Trial Rule 11 where it determines that a verified pleading or motion contains information the attorney knows to be false. *Zwiebel v. Zwiebel*, 689 N.E.2d 746, 750 (Ind. Ct. App. 1997) (basing the trial court's discretion to impose sanctions on the provision that an attorney may be subjected to appropriate disciplinary action for a willful violation of the rule), *trans. denied*. Both Maple Lane and the trial court focus on the representation from the filing of the complaint through several days of trial that the invoices attached to Brazier's complaint were "copies" of the originals submitted to Maple Lane. They also note Brazier's insistence throughout this litigation that not only were the "copies" authentic, but Maple Lane had judicially admitted they were authentic and owed. In fact, the invoices were created out of whole cloth after Brazier met with his attorney in preparation for filing this lawsuit; the reliability of those invoices as proof of anything is therefore suspect. Brazier's counsel signed numerous pleadings and motions asserting the authenticity of the invoices as copies, and we conclude the evidence demonstrates Brazier's counsel knowingly mispresented and/or failed to correct any misrepresentation regarding the nature of those invoices from the day this litigation was initiated. As such, the trial court did not abuse its discretion in ordering her to pay a small percentage of Maple Lane's attorney fees generated by this litigation.

# Conclusion

[37] The trial court did not err in denying Brazier's motion for summary judgment or in its evidentiary rulings at trial. Further, the trial court's judgment is not clearly erroneous, and the trial court did not abuse its discretion in imposing sanctions against Brazier's counsel for mispresenting the nature of the documents on which Brazier based his entire case. The judgment of the trial court is affirmed.

[38] Affirmed.

May, J., and Mathias, J., concur.