## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 28 2017, 5:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jonathan D. Harwell | Curtis T. Hill, Jr. |
| Harwell Legal Counsel LLC | Attorney General of Indiana |
| Indianapolis, Indiana | |
| | J.T. Whitehead |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Washington, | December 28, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 45A03-1703-PC-682 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, | The Honorable Clarence D. Murray, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 45G02-0910-PC-5 |

**Robb, Judge.**

# Case Summary and Issues

[1]     Following a jury trial, Christopher Washington was found guilty of two counts of murder, a felony; attempted murder, a Class A felony; attempted robbery, a Class A felony; aggravated battery, a Class B felony; criminal confinement, a Class B felony; battery, a Class C felony; and was found to be an habitual offender. The trial court entered judgment of conviction and sentenced Washington to an aggregate sentence of 190 years in the Indiana Department of Correction. On direct appeal, we affirmed Washington's convictions. *Washington v. State,* No. 45A03-0610-CR-456 (Ind. Ct. App. Aug. 2, 2007), *trans. denied.* Thereafter, Washington, pro se, filed a petition for post-conviction relief. Washington then filed a second amended petition for post-conviction relief, by counsel, alleging ineffective assistance of trial counsel and ineffective assistance of appellate counsel. The post-conviction court denied Washington's petition. Washington now appeals the denial of his petition for post-conviction relief, raising eight issues for our review, which we consolidate and restate as: 1) whether the post-conviction court erred in concluding Washington's trial counsel was not ineffective; and 2) whether the post-conviction court erred in concluding Washington's appellate counsel was not ineffective. Concluding trial and appellate counsel were not ineffective, we affirm the post-conviction court's denial of his petition for post-conviction relief.

# Facts and Procedural History

[2] We summarized the facts and procedural history of this case in Washington's direct appeal:

> Early on December 19, 2003, Lewayne Green, Tivon Williams, and George Lynn were at Williams's apartment on Kenwood Street in Hammond, Indiana, playing video games. There was a knock on the door, and Green answered it. He saw Washington, a friend of Williams whom he knew only as "C-Murder" at the time (and later identified as Washington). After opening the door, Green turned around and walked back to his chair. When Green turned around, Washington was pointing a "big gun" in his face. Still pointing the semi-automatic handgun in Green's face, Washington ordered Green, Williams, and Lynn to lie face down on the floor. Another man had shown up with Washington and was wearing a red mask and also carrying a handgun. Washington pulled out gray duct tape and taped the hands of Green, Williams, and Lynn. After taping up their hands, Washington went through Green's pockets and took his wallet and some money. Washington put the gun to Green's head again, asking "where the rest of it was at." Green responded that Washington had everything, and Washington then took off Green's shoes.
>
> Soon after, there was a knock on the door of the apartment across the hall. The man with the red mask ordered Green, Williams, and Lynn to be quiet or else he would kill them. After a couple minutes of silence, Washington and the red-masked man began rifling around in the kitchen. Then, Green heard the front door of the apartment open and heard a burst of gunshots.
>
> After the shots had been fired and gray smoke filled the air, Green got up, loosened his hands and obtained help from neighbors. Green, who had been shot in the leg, was transported to the hospital. Williams had six gunshot wounds. Lynn had five gunshot wounds. Williams and Lynn died on the scene from

their gunshot wounds. Green later described C-Murder and identified him as Washington through a photo array.

Officers Robert Vaught and Rita Harper were the first to arrive at the scene. Officer Vaught questioned Green and looked around the apartment. Officer Vaught stated that the apartment had been ransacked, with the refrigerator door open, cushions on the floor, and kitchen cabinets open. Prior to the coroner's office checking the bodies, Sergeant Anthony Jaroszewski noticed that the victims' pockets had been turned inside-out, as if someone had tried to go through them.

Paul Fotia, a firearms examiner, found that by comparison, there were three different firearms which fired the eight different bullets recovered. One of the bullets being an old one, Fotia determined that the other seven bullets came from two different firearms. Fotia also determined that the bullets were fired from semi-automatic firearms.

The State charged Washington with two counts of murder, attempted murder, attempted robbery, aggravated battery, criminal confinement, battery, and being an habitual offender. At the trial, Chanel Washington, Washington's girlfriend, testified that Washington had been with her all morning when the shooting took place. The jury found Washington guilty of all counts. The trial court then ordered Washington to serve 190 years in the Indiana Department of Correction.

*Id.* at *1-2 (citations omitted).

[3] On October 6, 2009, Washington filed a pro se petition for post-conviction relief. On March 18, 2016, Washington filed a second amended petition for post-conviction relief, by counsel, alleging ineffective assistance of trial and

appellate counsel. After conducting a hearing, the post-conviction court entered findings of fact and conclusions of law denying Washington's petition for post-conviction relief. The post-conviction court concluded Washington was not denied the effective assistance of trial or appellate counsel. Washington now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Standard of Review

Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). Post-conviction procedures create a narrow remedy for subsequent collateral challenges to convictions, and those challenges must be based on the grounds enumerated in post-conviction rules. *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied.* "Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal." *Id.*

On appeal, a petitioner who has been denied post-conviction relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). We may not reweigh the evidence or reassess the credibility of the witnesses and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). To succeed on appeal, the petitioner must show that the evidence is without conflict and leads

unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Strowmatt v. State*, 779 N.E.2d 971, 975 (Ind. Ct. App. 2002).

[6] Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. We review the post-conviction court's factual findings under a clearly erroneous standard. *Id.*

## II. Ineffective Assistance of Counsel

[7] Washington claims that he was denied the effective assistance of both trial and appellate counsel. A claim of ineffective assistance of counsel is proper grounds for post-conviction proceedings. *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012). The standard by which we review such claims is well established. In order to prevail on a claim of this nature, a petitioner must satisfy a two-pronged test, showing that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors the result of the proceeding would have been different. *Jervis v. State*, 28 N.E.3d 361, 365 (Ind. Ct. App. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984)), *trans. denied.* The two prongs of the *Strickland* test are separate and distinct inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans.*

*denied*, *cert. denied*, 135 S. Ct. 2376 (2015). Therefore, if it is "easier to dispose of an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

Regarding the first prong of the *Strickland* test, a petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious petitioner did not have "counsel" as guaranteed by the Sixth Amendment to the United States Constitution. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). The second prong requires petitioner to show a reasonable probability that, *but for* counsel's errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied.*, 537 U.S. 839 (2002). Moreover, we recognize a strong presumption that counsel's representation was not ineffective, and to overcome such a presumption a petitioner must offer "strong and convincing evidence." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

## A. Trial Counsel

Here, Washington contends trial counsel rendered ineffective assistance in failing to properly present Washington's alibi, failing to fully impeach and

cross-examine two State witnesses, failing to remedy the issues of surprise evidence and testimony, and advising Washington to sign an incorrect stipulation.

### *1. Alibi*

Washington contends trial counsel was ineffective in failing to properly present his alibi. The failure to present an alibi defense is not necessarily ineffective assistance of counsel. *D.D.K. v. State*, 750 N.E.2d 885, 890 (Ind. Ct. App. 2001). However, Washington's trial counsel *did* advance an alibi defense by utilizing the testimony of Chanel Washington, Washington's girlfriend. Chanel testified that she was with Washington the entire morning of the murders— testimony that was ultimately disbelieved by the jury. Nevertheless, Washington contends trial counsel was ineffective by not "fully presenting the alibi defense" including testimony from Washington's mother, Stephanie Washington, and evidence of telephone records purportedly showing Washington made telephone calls from his home the night of the offense. Corrected Appellant's Brief at 13.

### *a. Failure to Call a Witness*

Washington alleges that trial counsel failed to include Stephanie on the witness list thereby preventing Stephanie from testifying at trial. "A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess, although a failure to call a useful witness can constitute deficient performance." *Brown v. State,* 691 N.E.2d 438, 447 (Ind. 1998)

(citation omitted). We will not find counsel ineffective for failure to call a particular witness absent a clear showing of prejudice. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 108 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001). Nothing in the record before us indicates why Washington's trial counsel did not list Stephanie on the witness list and Washington's trial counsel has since passed away.[1] Regardless, we presume counsel is not ineffective and judge counsel's performance by the standard of objective reasonableness, not subjective state of mind. *Woodson v. State*, 961 N.E.2d 1035, 1041 (Ind. Ct. App. 2012), *trans. denied*. Because we conclude below Washington did not suffer prejudice, our review of whether trial counsel's failure to include Stephanie on a witness list was objectively unreasonable is ultimately unnecessary.

[12] At the post-conviction relief hearing, Washington presented Stephanie's affidavit. In the affidavit, Stephanie states that she returned home between 8:00 a.m. and 9:00 a.m. on the date of the murders to find Washington "passed out drunk on my livingroom [sic] floor." Exhibits, Volume 3 at 8. The evidence reveals the murders were committed sometime before 6:20 a.m. Stephanie's affidavit provides no evidence that she was with Washington at the time of the murders or that she had knowledge of Washington's whereabouts at or around the time of the murders.

---

[1] We note trial counsel did attempt to call Stephanie at trial but the court sustained the State's objection that the witness was not provided to the State prior to trial. *See* Trial Transcript at 563.

[13] Therefore, even if trial counsel had listed Stephanie on the witness list and had presented her testimony, there is not a reasonable likelihood that the outcome of the trial would have been different. *See Bethea v. State,* 983 N.E.2d 1134, 1138 (Ind. 2013) (noting to demonstrate prejudice from counsel's deficient performance, a petitioner must establish a reasonable probability that but for counsel's alleged error the result of the proceeding would have been different.) Washington's ineffective assistance of trial counsel claim on this basis fails.

### b. Failure to Present Evidence

[14] Similarly, Washington alleges trial counsel was ineffective in failing to present evidence of telephone records purportedly showing Washington made phone calls from his home the night of the offense.

[15] Upon review, the telephone records are poorly scanned and completely unreadable. Exhibits, Vol. 3 at 11, 13. Indiana Rule of Appellate Procedure 51(A) provides the "copying process used [for appendices] shall produce text in a distinct black image . . . ." Although failure to comply with the appellate rules does not necessarily result in waiver of the issues presented, it is appropriate where, as here, such noncompliance impedes our review. *See In re Moeder*, 27 N.E.3d 1089, 1097 n.4 (Ind. Ct. App. 2015), *trans. denied*. Moreover, Washington does not even mention the specific contents of the telephone records, relying instead on the blanket assertion that the records show Washington "was making calls from his home the night of the offense[s]." Corrected Appellant's Br. at 13.

Waiver notwithstanding, the Findings of Fact and Conclusions of Law state:

> PCR Petitioner's Exhibit #4 is the "MCI Call Search" for the phone number associated with [Stephanie Washington]. This document does <u>not</u> list any calls between a call ending at 4:32 am and a call beginning at 8:30 am on December 19, 2003. As stated above, the crimes for which Washington was convicted took place at approximately 6:20 am on December 19, 2003. In addition, the calls that are listed on the document show times only and are not recorded. Therefore, the person(s) using this line are not known. These phone records do not corroborate Washington's alibi defense.

Appealed Order at 8.

Like Stephanie's testimony, the telephone records do not directly support Washington's alibi defense. In fact, there is no evidence in the record that Washington was the one who placed or received the telephone calls. Accordingly, Washington has not demonstrated that counsel rendered ineffective assistance by not presenting this evidence at trial. *See Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010) (finding counsel was not ineffective in failing to present evidence of an answering machine tape where a series of inferences were required to support the theory of the defense).

## 2. Inadequate Cross-Examination

### a. Lewayne Green

Next, Washington alleges trial counsel was ineffective in failing to impeach a key State's witness, Lewayne Green, with the "full extent of his contradictory statements made prior to trial and at trial." Corrected Appellant's Br. at 14.

Washington argues that had trial counsel fully impeached Green, Washington's attempts to argue the incredible dubiosity rule on direct appeal would have been successful.

[19] The post-conviction court found this issue barred by res judicata. As a general rule, if an issue was known and available but not presented on direct appeal, the issue is waived. *Craig v. State*, 804 N.E.2d 170, 172 (Ind. Ct. App. 2004). If the issue was presented upon direct appeal, but decided adversely, it is res judicata. *Id.* We disagree with the post-conviction court and view Washington's argument as one regarding ineffective assistance of counsel, not the incredible dubiosity rule. Washington argues that trial counsel fell below an objective standard of reasonableness by failing to adequately cross-examine Green and that he suffered prejudice on direct appeal through this court's denial of his argument regarding the incredible dubiosity rule. Therefore, while this court determined the incredible dubiosity rule failed on direct appeal, Washington is not asking we find to the contrary. Rather, Washington asks we find trial counsel ineffective for failing to highlight the "full extent of [Green's] contradictory statements . . . ." Corrected Appellant's Br. at 14.

[20] Regardless of the application of res judicata, we still find Washington's claim must fail. It is well established that "the method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance." *Kubsch*, 934 N.E.2d at 1151; *see also Waldon v. State*, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997) ("the nature and extent of cross-examination is a matter of strategy delegated to trial counsel"), *trans. denied*.

Here, the record shows a competent—even skilled—cross-examination of Green. Through sixty-seven pages of the transcript, trial counsel highlights inconsistencies in Green's testimony, while attempting to depict a confused witness who was intoxicated at the time of the murders. Accordingly, we conclude Washington has failed to establish he received ineffective assistance regarding trial counsel's cross-examination of Green.

[21] Moreover, Washington has failed to establish that he suffered prejudice. Washington relies on the unsuccessful application on direct appeal of the incredible dubiosity rule to show he was prejudiced by trial counsel's ineffective performance. Such reliance is misplaced. First, to establish prejudice, *Strickland* and our subsequent case law provides, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the *proceeding* would have been different." *Strickland,* 466 U.S. 668 at 694 (emphasis added). Rather than argue trial counsel's error would have changed the outcome of the trial, Washington argues but for trial counsel's error the result of his direct *appeal* would have been different. Second, even assuming trial counsel established Green's testimony was "inherently contradictory" for later appeal, Washington would still be unable to satisfy the remaining requirements for the application of the incredible dubiosity rule because there were corroborating witnesses and other circumstantial evidence. *See Moore v. State,* 27 N.E.3d 749, 757-59 (Ind. 2015) (holding the incredible dubiosity rule does not apply where there are corroborating witnesses and noting, "where there is circumstantial evidence of an individual's guilt, reliance

on the incredible dubiosity rule is misplaced."). Therefore, although we find Washington's claims regarding trial counsel's cross-examination of Green are not res judicata, he has nevertheless failed to establish deficient performance by trial counsel or demonstrate that he suffered prejudice.

### b. Paul Fotia

[22] Washington also alleges trial counsel was ineffective in failing to adequately cross-examine Sergeant Paul Fotia of the Indiana State Police.

[23] Fotia, a firearms expert, testified that he examined eight bullets and eleven bullet casings. Of the eight bullets, four bullets were fired from one .45 caliber firearm, three bullets were fired from a different .45 caliber firearm, and the eighth bullet was fired from a third firearm—either a .38 Special or a .357 Magnum. Regarding the eleven bullet casings, all .45 caliber, Fotia testified seven casings were positively identified as having been fired from one firearm while the remaining four bullet casings were positively identified as having been fired from a "second or different .45 auto caliber firearm." Trial Tr. at 444. Washington contends trial counsel was deficient in his cross-examination of Fotia for several reasons.

[24] First, Washington relies on *Turner v. State,* 953 N.E.2d 1039, 1052 (Ind. 2011), for the proposition that an effective cross-examination of a firearms expert can be performed, highlighting the fact that a counter-expert may be used. Washington, however, does not provide an argument regarding *Turner's* application to the facts presented here, nor does Washington explain how trial

counsel's failure to secure a counter-expert rendered his performance ineffective.

[25] Second, without further explanation, Washington alleges Fotia was "only comparing the items to themselves." Corrected Appellant's Br. at 17. Washington fails to argue—or even allege—that such a procedure is scientifically incorrect, unreliable, or renders Fotia's testimony susceptible to impeachment.

[26] Third, Washington alleges that while Fotia testified he examined eight bullets and eleven bullet casings, the "lab reports appear to indicate that Fotia only analyzed 2 bullets and 2 casings" and that trial counsel made no attempt to cross-examine regarding this contradiction. *Id.* On review, we find it difficult to discern on what evidence Washington relies for this assertion because, without further explanation, he cites to Exhibits 8-15.[2] Accordingly, we are unable to discern the basis for Washington's argument.

---

[2] Again, we direct counsel to Indiana Rule of Appellate Procedure 46(A)(8)(a), which provides that each contention made in the argument section of an appellant's brief "must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." Indiana Rule of Appellate Procedure 22(C) provides "[a]ny factual statement shall be supported by a citation *to the volume and page* where it appears in an Appendix, and if not contained in an Appendix, to the volume and page it appears in the Transcript or exhibits . . . ." (emphasis added). Although failure to comply with the appellate rules does not necessarily result in waiver of the issues presented, it is appropriate where noncompliance impedes our review. *In re Moeder*, 27 N.E.3d at 1097 n.4. Like *In re Moeder,* we endeavor to address the merits of Washington's arguments notwithstanding the lack of cogent argument or inaccurate citations.

Exhibit 8, the "Request for Laboratory Examination," includes the description of eight bullets and eleven bullet casings. Exhibits, Vol. 3 at 19-20. Exhibit 9, the "Certificate of Analysis," includes the description of eleven bullet casings. *Id.* at 22. Exhibit 10, "Stipulation No. 6," includes the description of eleven bullet casings. *Id.* at 24. To the extent that Washington relies on Exhibits 11, 12, 13, and 14, which describe only

Because Washington has failed to establish—or even advance a cogent argument—that trial counsel's performance fell below an objective standard of reasonableness, we need not consider Washington's argument regarding prejudice. *See Talley*, 736 N.E.2d at 769. Therefore, Washington has failed to establish the post-conviction court clearly erred in determining that trial counsel did not perform deficiently with respect to Fotia's testimony.

### 3. Failure to Object

Washington claims trial counsel was ineffective for failing to object to the chain of custody and the foundation of the State's evidence, namely a twelfth casing recovered over a month after the incident, and for failing to allege a *Brady* violation therefrom.

To begin, Washington alleges the State violated *Brady v. Maryland,* 373 U.S. 83, 86-88 (1963). Our supreme court has held that the failure to raise a *Brady* violation on direct appeal results in forfeiture of the issue on post-conviction except to the extent that such claim may support a claim of ineffective assistance of appellate counsel. *Minnick v. State,* 698 N.E.2d 745, 750-51 (Ind. 1998), *cert. denied,* 528 U.S. 1006 (1999). Because Washington failed to allege

---

two bullets and two casings, such reliance is misplaced. These exhibits purport to be prepared by Sue Scott, not Fotia. *Id.* at 27, 29, 31, 33. Regardless, Washington fails to argue how these exhibits contradict Fotia's testimony. Finally, Exhibit 15 does not include a description of evidence at all.

the State violated *Brady* on direct appeal, Washington has waived review of this issue.

[30]     Therefore, we turn to Washington's argument that trial counsel was ineffective for failing to object to the chain of custody and the foundation of the twelfth bullet casing. During Washington's trial, a State witness testified regarding a twelfth bullet casing which was found almost a month after the underlying crimes.[3] The State admitted to being unaware of the casing and, after checking "some property inventories" found

> there was an additional property inventory that we had not previously had in our file, nor had we provided to [trial counsel]. We provided him with a copy of that this morning and that property inventory is, in fact, for a casing that was recovered almost a month after the incident.

Trial Tr. at 503-04. The State informed the trial court that it planned to call the police officer who obtained the casing from a relative of a victim. Trial counsel objected to the State's admission of the casing on the basis of hearsay, arguing that the relative who found the bullet must testify for the casing to be admissible. The trial court allowed the State to admit the casing over trial counsel's hearsay objection but permitted trial counsel "wide latitude on cross with respect to the casing." *Id.* 506-07. In a brief cross-examination, trial

---

[3] This twelfth casing was not submitted for examination by the State's firearm examiner because it was "overlooked when [the police] took the evidence out of property" and transported the evidence for testing by the Indiana State Police. Trial Tr. at 498.

counsel established that the police officer did not have personal knowledge of the origin of the bullet casing.

[31] To show ineffective assistance based on counsel's failure to object, a petitioner must demonstrate the trial court would have sustained the objection. *Glotzbach v. State*, 783 N.E.2d 1221, 1224 (Ind. Ct. App. 2003). Here, Washington has failed to advance an argument that had trial counsel objected to the chain of custody and the foundation of the twelfth bullet casing, such objection would have been sustained. Accordingly, Washington has failed to meet his burden.

[32] On this point, Washington also alleges trial counsel was ineffective for not seeking a continuance or filing a motion to correct error regarding introduction of the twelfth bullet casing. Like a claim of ineffective assistance based on counsel's failure to object, "To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been successful." *Wales v. State*, 768 N.E.2d 513, 523 (Ind. Ct. App. 2002), *aff'd on reh'g*, 774 N.E.2d 116, *trans. denied*. Again, Washington has failed to advance an argument regarding whether such motions would be successful. Therefore, we conclude that Washington has failed to establish by a preponderance of the evidence that his trial counsel was ineffective in this regard.

[33] In addition to Washington's failure to establish his proposed motions and objections would have been successful, Washington has also failed to establish he suffered prejudice from the admission of the twelfth bullet casing. Given the

remaining eleven bullet casings, eight bullets, and the weight of the testimony against Washington, we conclude that Washington did not suffer prejudice.

### 4. Stipulation

Washington claims trial counsel was ineffective for advising him to sign a stipulation of evidence which contained a "misstatement of fact." Corrected Appellant's Br. at 19.

Specifically, Washington contends "the stipulation mistakenly stated the amount of duct tape recovered at the scene[,]" *id.* at 20, citing to Exhibits 7-10. These four Exhibits include two stipulations—Exhibit 7 and Exhibit 10. Exhibit 7 provides that if called to testify, Officer Timothy Leinback would testify that he collected, among other things, "One piece of gray duct tape, State's Exhibit 62." Exhibits, Vol. 3 at 17; Trial Tr. at 374. Exhibit 10 states that if called to testify, Frank Aldrich of the Indiana State Police Crime Laboratory, would testify that he received, among other things:

> ISP Item 19  Sealed brown paper bag containing duct tape, State's Exhibit # 60.

> ISP Item 20  Sealed brown paper bag containing duct tape, State's Exhibit # 62.

*Id.* at 24-25; Trial Tr. at 509-11.

Washington alleges the stipulation stated an incorrect amount of duct tape and that, unlike trial counsel, Washington had not received the evidence and was

unable to examine it. However, Washington fails to explain how either stipulation was factually incorrect beyond the assertion that this was relevant "because that was how the three (3) people were said to have been bound in the home." Corrected Appellant's Br. at 20. Accordingly, we are unable to adequately address Washington's argument and it is therefore waived. *See, e.g., Thomas v. State,* 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012) (noting that a reviewing court which must search the record and make up arguments where a party has not adequately presented them runs the risk of becoming an advocate rather than an adjudicator; on review, we will not search the record to find a basis for a party's argument), *trans. denied.*

### 5. Failure to Provide Case Law

[37] Washington next contends that trial counsel should have provided the trial court with case law supporting a hearsay objection.[4] Specifically, Washington points to four instances during three police officers' testimonies where the officers relay statements made by Green which the State admitted as course-of-investigation testimony over trial counsel's hearsay objections.

[38] Hearsay is an out-of-court statement offered for "the truth of the matter asserted," Ind. Evidence Rule 801(c)(2), and it is generally not admissible as evidence, Evid. R. 802. Whether a particular statement is hearsay usually

---

[4] Washington's argument regarding trial counsel's failure to provide case law is comingled with Washington's argument regarding ineffective assistance of appellate counsel. *See* Corrected Appellant's Br. at 22. For the purpose of logical organization, we address Washington's argument with the rest of his claims regarding ineffective assistance of trial counsel.

depends on the purpose for which the statement is offered rather than the substance of the statement. *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014). Out-of-court statements made to law enforcement during the course of an investigation are non-hearsay if introduced primarily to explain why the investigation proceeded as it did. *Id.*

[39] Washington contends trial counsel was ineffective for failing to provide the court with case law tending to show the officers' testimony was inadmissible hearsay. In so arguing, Washington asserts that had trial counsel taken the opportunity to provide case law, trial counsel could have presented the court with *Williams v. State*, 544 N.E.2d 161 (Ind. 1989), "for the proposition that statements made to an officer during his investigation that amounts [sic] to assertions that the defendant is guilty is not admissible." Corrected Appellant's Br. at 23.

[40] Initially, we note that Washington has not provided us with authority to support the proposition that despite objecting, trial counsel may still be found ineffective for failing to provide the trial court with case law supporting the objection. Indeed, we are aware of no such authority. Nevertheless, *Williams* is easily distinguishable from the facts presented here. In *Williams*, a detective testified that, based on information from an unidentified informant, he included the defendant's photo in a photo array. Our supreme court reversed, holding such testimony "provide[d] the jury with a basis for making inferences that the informant had knowledge that [defendant] committed the offense" without the defendant having an opportunity to test the inferences through cross-

examination. *Williams,* 544 N.E.2d at 163. Here, testifying officers were relaying the statement of Lewayne Green, a testifying witness, and trial counsel cross-examined Green. *See Wisehart v. State,* 693 N.E.2d 23, 47 (Ind. 1998) (distinguishing the facts presented from those of *Williams* because the declarant in *Williams* was an unidentified informant). Moreover, trial counsel attempted to distinguish the State's cited authority and successfully requested that the trial court admonish the jury regarding the purpose of the testimony. *See* Trial Tr. at 285-86; 253. This court may presume a timely and accurate admonishment by the trial court will cure any defect in the admission of evidence. *Green v. State,* 587 N.E.2d 1314, 1317 (Ind. 1992). Therefore, we conclude Washington has failed to establish trial counsel was ineffective in this regard.

### 6. Cumulative Error

[41] Finally, Washington claims trial counsel's cumulative errors rendered his representation ineffective. "Errors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." *Pennycuff v. State*, 745 N.E.2d 804, 816-17 (Ind. 2001). When a conviction is based upon an accumulation of trial counsel's errors and those errors do substantial damage to the defense, the conviction must be reversed. *French v. State*, 778 N.E.2d 816, 826 (Ind. 2002).

[42] Here, we have reviewed each of Washington's claims regarding ineffective assistance of trial counsel and have concluded in each instance that the post-conviction court's denial of post-conviction relief was not clearly erroneous. Viewed together, we find no reasonable probability that the outcome of

Washington's trial would have been different. Thus, Washington has failed to overcome the presumption that counsel's representation was not ineffective with "strong and convincing evidence." *Smith*, 822 N.E.2d at 202.

## B. Appellate Counsel

[43] Washington also alleges appellate counsel rendered ineffective assistance by presenting only insufficiency claims instead of several hearsay issues preserved at trial.

[44] We review claims of ineffective assistance of appellate counsel using the same standard as applied to claims of ineffective assistance of trial counsel. *Fisher v. State,* 810 N.E.2d 674, 676-77 (Ind. 2004). Indiana law recognizes three basic categories for claims of appellate counsel's ineffectiveness: "(1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Id*. at 677. Here, Washington's arguments fall within the second category, i.e., that his appellate counsel failed to raise claims and thus waived the issues on appeal.

[45] Appellate counsel has considerable discretion in choosing strategy and tactics and, like trial counsel, we presume counsel's assistance was adequate and decisions were made in the exercise of reasonable professional judgment. *See, e.g., State v. Miller,* 771 N.E.2d 1284, 1288 (Ind. Ct. App. 2002), *trans. denied.* "[T]he decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Bieghler v. State,* 690 N.E.2d 188, 193 (Ind. 1998), *cert. denied,* 525 U.S. 1021 (1998). Due to the deference paid

such strategic decisions, ineffectiveness is rarely found when the issue is failure to raise a claim on direct appeal. *Taylor v. State,* 717 N.E.2d 90, 94 (Ind. 1991).

[46] First, Washington argues appellate counsel was ineffective for failing to appeal the trial court's admission of "drumbeat repetition course-of-investigation testimony from the officers in the case to reinforce the testimony of Green." Corrected Appellant's Br. at 22. Washington maintains the State's course-of-investigation testimony was inadmissible hearsay. However, as we have already observed, Washington's hearsay objections were not successful and the case on which Washington relies is easily distinguishable from the facts presented here. Moreover, even if the testimony of the three officers was hearsay, as opposed to course-of-investigation testimony, it is cumulative of Green's testimony which had already been presented. We have previously held that erroneously admitted evidence that is merely cumulative of other evidence already in the record is harmless and not grounds for reversal. *Williams v. State,* 782 N.E.2d 1039, 1047 (Ind. Ct. App. 2003), *trans. denied.* Therefore, Washington has not demonstrated appellate counsel was ineffective. *See Stowers v. State,* 657 N.E.2d 194, 200 (Ind. Ct. App. 1995) (holding appellate counsel is not ineffective for declining to present a claim that would have been meritless), *trans. denied.*

[47] Second, Washington alleges appellate counsel was ineffective for failing to present the trial court's admission of the twelfth bullet casing as an issue on appeal. Specifically, Washington contends had appellate counsel argued the hearsay objection on appeal, this court would have found the statements of the

family member as relayed by the officer to be inadmissible hearsay and the State would then have lacked foundation to admit the twelfth bullet casing. As we concluded above, given the weight of the remaining evidence, Washington has failed to establish prejudice. *See Garrett v. State,* 992 N.E.2d 710, 724 (Ind. 2013) (explaining that the prejudice prong for the waiver of issues category of an ineffective assistance of appellate counsel claim requires an examination of whether the issues would have been clearly more likely to result in reversal or an order for new trial). As such, we need not address whether appellate counsel's performance was deficient in this regard. *See Young v. State,* 746 N.E.2d 920, 927 (Ind. 2001) (noting that is unnecessary to address the allegations of deficient performance where the petitioner has failed to establish prejudice).

# Conclusion

The post-conviction court did not err in denying Washington's petition for post-conviction relief. Because Washington fails to demonstrate he received ineffective assistance of trial or appellate counsel, we affirm the post-conviction court's denial of post-conviction relief.

Affirmed.

Riley, J., and Pyle, J., concur.